WILLIAM TYSON, Appellant, *v.* THOMAS G. WELLS
and LUCIAN SKINNER, Respondents.

Our statute concerning referees, is in aid of the common law remedy by arbitra-
tion, and does not alter its principles.

The Court will not disturb the award of an arbitrator, or report of a referee,
unless the error complained of, whether of law or fact, appear on the face of
the award or report.

Exceptions must be taken to the rulings of the referee during the trial, and cer-
tified by him.

If there be no exceptions embodied in the report, showing that the referee erred
in part, and the rule of law by which he arrived at his conclusions, be not
disclosed, the Court cannot disturb the report, and an order granting a new
trial in such case, will be reversed.   .

As to when the contract of sale is complete before actual delivery, so as to throw
the risk of loss on the vendee, &c., see the opinion of the referee, reported in
this case.

APPEAL from the Superior Court of San Francisco.
Tyson sued Wells & Skinner, declaring, first, generally, for
goods sold and delivered. Second, stating specially, that on the
18th of June, 1850, the defendants contracted for and bought of
the plaintiff, a certain quantity of bricks and lime, if the same
were in good order, which the defendants would decide at sight;
that on the next day, the defendants inspected the bricks and
lime, and expressed their satisfaction therewith, and thereupon
concluded their said contract for the purchase of the same, to
wit, 51072 bricks, at $36 per thousand, and 98 barrels of lime,
at $6 per barrel, amounting to $3000; and that the plaintiff
afterwards, and before suit, delivered said bricks and lime to the
defendants, at their request. Averment that defendants had not
paid, &c., and prayer for judgment for $6000 and costs, &c.
The answer of the defendants denied the complaint; and fur-
ther set up, that the contract was for the sale of 53000 bricks
and 98 barrels of lime, more or less, to be delivered within one
week, in good order, to be decided by the defendants at sight;
that the plaintiff delivered 15200, for which the defendants had
tendered the contract price, and paid the same into Court; and

that the defendants had always been ready and willing to receive and pay for the residue of the bricks and the lime, according to the contract, but the plaintiff, though often requested, refused to deliver the same; to the damage of the defendants, $500, for which, with costs, they prayed judgment against the plaintiff.

The bill of particulars filed, stated that the action was brought to recover for bricks and lime sold and delivered, on the 18th and 19th days of June, 1850, to wit:

| | |
|---|---:|
| 51072 bricks, at $36 per thousand, | $1838.59 |
| 98 barrels of lime, at $6 per barrel, | 588.00 |
| | $2426.59 |

The cause seems to have been tried by a jury, in July, 1850, who found a verdict for the plaintiff for $2426.59. The transscript of the record does not show how this verdict was avoided; but the case was again noticed for trial; and in December, 1850, by agreement of parties, the cause was ordered to be referred, for decision of the issues of fact and of law, to F. J. Lippitt and two others, the report of whom, or of any two of them, was to stand as the decision of the Court, and judgment to be entered thereon, with costs to the prevailing party; such report to be made on or before the 15th of that month, and to be conclusive, the parties agreeing that no exception to the report, or appeal from the judgment thereon, should be taken by either party. By an agreement of the parties, made on the 13th of December, the time for making and filing the report, was extended as long as might be necessary. Lippitt and another of the referees, made their report January 14th, 1851, finding in favour of the plaintiff for $2426.59, the contract price of all the bricks and lime, without interest. The report was filed February 6th, 1851; and judgment entered accordingly, on the plaintiff's motion, and proof of notice of the motion to the defendants. The defendants moved to set aside the judgment and report, on various grounds; and one of them filed his affidavit of the discovery of new and material evidence, (without specifying it;) and stating that the referees rejected material and admissible evidence offered by the defendants; and that, as he was advised, &c., the report was against law and evidence.

A rule was granted, requiring the referees to report the testimony and proceedings in the cause. The referees made a report; but owing to the testimony not having been regularly taken down, there was some dispute as to what the testimony was; and sundry affidavits on the subject were filed. It seems, however, to have been proved before the referees, that on the 18th of June, 1850, the plaintiff agreed, in writing, with one Pierce, the agent of the defendants, to sell the defendants all the bricks and lime of the plaintiff on board the Ship Utica, lying in the harbour of San Francisco, then supposed to be about 53,000 bricks, and 98 barrels of lime, "more or less," the bricks at $36 per thousand, and the lime at $6 per barrel;—to be delivered from the ship's tackles within one week, if in good order, to be decided at sight; that on the next day, the defendant's agent, after slightly examining the bricks and lime on board, and being told that the number of bricks in the invoice was correct, executed to the plaintiff a bought note of the purchase of 51,072 bricks, (the number in the invoice,) and 98 barrels of lime, at the aforesaid prices, amounting $2,426.59, and indorsed on it an order on the defendants to pay the "within bill, the same being satisfactory," on which the defendants indorsed their acceptance, payable "when the articles are delivered;" and their agent received from the plaintiff a delivery order for the bricks and lime on the captain of the vessel; upon which some 15,000 bricks were delivered to the defendants a few days afterwards; but before the delivery of the residue, the ship, with the remaining bricks and the lime was casually destroyed by fire.

Mr. Lippitt annexed to the report an elaborate and able opinion from which the following extracts are made, as affording a clear exposition of an important branch of commercial law. —"When property is lost by inevitable accident, the loss falls upon the owner. In the sale of goods, the right of property, and with it the risk, is transferred to the buyer, from the moment the contract of sale is complete, unless the sale be a conditional one. A conditional sale is one in which the right of property is not to pass until the fulfilment of some condition precedent. If the condition be precedent only to the passing of the right of possession, either of the thing purchased, or of the price, this does not constitute a conditional sale. If the seller, therefore,

stipulate that he shall retain possession until payment of the price, this does not prevent the transfer of the right of property in the meantime.   Again, if the buyer stipulate that he is not to pay the price until the delivery of the thing, neither does this prevent the right of property being transferred to the buyer. —Nothing but what relates to the passing of the right of property enters into the essence of the contract of sale; which consists, when complete, in an absolute transfer from the seller of the ownership of the thing sold to the buyer, in consideration, not of the actual payment of the price, but rather of the buyer's contracting the obligation to pay it.   Poth. Sale, 189.   That · which relates only to the time or mode in which the thing is to be delivered, or the price is to be paid, does not enter into the essence of an ordinary contract of sale, but is rather collateral to it.   If the sale be complete, but the thing sold is not to be delivered until after a certain time, or until the payment of the price, the right of property has nevertheless passed to the buyer; and if the thing be lost by inevitable accident, before it can be delivered according to the stipulation, the loss must fall upon the buyer.   So, where the sale is complete, but the price is not to be paid until after a certain time, or until the thing be delivered, the right of property has nevertheless passed to the buyer; and if the thing be lost by inevitable accident, before the payment of the price according to the stipulation, the loss must fall upon the buyer. . . .

"In this case, the stipulation made by the defendants, to be paid when delivered, amounted only to the ordinary condition of 'cash on delivery;' and these terms imply only that there is to be no payment,—not that the property is not to pass,—until the delivery is made.   In all such sales, universal usage shows that the right of property is considered as passing to the buyer the moment the bargain is consummated, and before the property sold is delivered; because, from that moment, the buyer disposes of the property as his own, and his right to do so is universally recognized.   Nothing is more common than for goods to be repeatedly sold, passing through the hands of several successive owners, before any delivery or payment of the price is made. After the consummation of the bargain on the 19th of June, if the defendants had been offered a very large advance on the

price they were to pay, or for any other reason, had found it for their interest to dispose of the bricks and lime, before receiving them, there is no reason to doubt that they would have sold them, and considered themselves as having the right to do so. . . . It is but reasonable that he who has the right to dispose of property, to make a profit of it, in a word, he who has all the benefit of the property, should also have the risk of it. The seller, after the sale, until delivery, is the bailee of the purchaser;—a bailee without hire, and frequently to his own inconvenience, for the buyer's accommodation. It is unreasonable to require him to be also the insurer. . . . Even a total failure to pay the price does not enable the seller to rescind the sale; and if he should sell the article again, he would be liable in trover; and replevin would lie against the second purchaser. Story's Sales, sects. 413. 416. 430; Hill. Sales, 24. . . . In this case, therefore, if the contract was complete, it will be immaterial to inquire whether any delivery of the articles destroyed, either actual or constructive, had taken place; or whether this was a severable contract, under which the risk, with respect to the articles delivered, and those not delivered, might be severed.

"Whatever may be thought of the abstract correctness of the above views, there seems to be no question that by the law of the land, the risk, in. a case like. the present, falls upon the buyer. The Civil Law threw the risk, before delivery, upon the buyer, as appears by the citations from the Institutes, made in Poth. Sale, 190; 2 Kent, 498. At the same time, under the Civil Law, the title did not pass to the buyer, until delivery and payment of the price. This severance of the risk from the title gave occasion to the attacks of certain commentators, to whom Pothier, in his Treatise on the Contract of Sale, ably replies. But finally, the common law, like the Civil Law, fixes the risk on the buyer, the moment the contract of sale is complete, and with more reason; since, under the common law, the risk always accompanies the ownership; whereas under the Civil Law, it was severed from it. 2 Kent, 498. . . .

"It is contended for the defendants, that the contract of sale was not complete, and the property had not passed, inasmuch as something remained to be done by the seller, before the delivery could be made according to the contract; for the delivery was to

take place at the ship's tackles, whereas the goods still remained in the hold.    The cases in which this principle has application, are those where that which remains to be done is something in order to the ascertainment of the quantity, quality, or price, or to the identification of the property sold, or where the contract is executory, as where the article sold has yet to be manufactured; such a contract being more strictly an agreement to sell, than a contract of sale.    But admitting the same principle to apply where what remains to be done is merely to bring the article sold to the point where the buyer is to receive it, the question arises whether this had not been done in the present instance?    It appears in evidence that the lighterman employed by the defendants to receive the bricks and lime, was also employed by the captain of the Utica, at his own expense, to get them up from the hold to the ship's tackles. . . . . . The seller, then, had an agent in readiness to get the goods up and deliver them at the ship's tackles, at his own expense, whenever the buyer should send for them. . . . . Could he be required to keep the whole quantity at the end of the ship's tackles till they should be taken away ? . . . . It was enough if the seller had the articles in such a state and place for delivery as the usage, in like cases, required, and was practicable under the circumstances.    Until called for by the buyer, the hold was the most proper place for them.    If, contrary to usage, they had been all taken on deck, and kept there till delivery, exposed to injury from the weather, &c., the seller would have been liable for the damage. . . . .

" It is contended for the defendants, that no real inspection had taken place, as contemplated by the agreement of the 18th of June, making it a condition, &c.    It appears that on the 19th of June, the defendants' agent went on board for the purpose of inspecting the articles; and after such an examination of them as was practicable, returned on shore, and drew the order on the defendants for the price, stating expressly that " it was satisfactory."    The defendants accepted the order, unqualified by any condition, except as to the time of payment.    These acts must be considered as a waiver of any further inspection, assuming the agreement of the 18th of June as admissible at all.

" Another objection is, that the contract of the 18th of June was for the sale of 53000 bricks, ' more or less,' &c.    If the

ultimate contract was for the sale of so many thousand bricks, with the qualification of 'more or less,' the plaintiff cannot recover.    The whole number not having been counted, the aggregate price had not been ascertained; so, that the sale not being complete, the articles not actually delivered when lost were still the property of the seller.    Poth. Sale, 192.    Assuming the agreement of the 18th of June to be admissible as a part of the case, the agreement of the 19th was made and signed by the defendants' agent immediately after his return from the ship, where he had been assured by the captain that the bricks had been thrice counted, and that the number was accurately shown by the invoice; and the agent then agreed to the count as given by the invoice, of 51072, giving an order on his principals for the amount due for this precise number.    This shows that whatever had been the understanding the day before, the sale concluded on the 19th was of precisely 51072 bricks, no more and no less, and of 98 barrels of lime, and that the aggregate price was therefore definitely ascertained.

"But the agreement of the 18th must be excluded, under the general rule which shuts out all evidence of prior negotiations offered to vary, or even explain the final written contract of the parties, which the paper of the 19th must be presumed to be. This rule appears to be equally applicable where the prior agreements are in writing, as where they were merely oral.    Neither is the agreement of the 18th admissible under any of the recognized exceptions to the rule: for, first, the written contract of the 19th is in every respect complete on its face; secondly, it contains no ambiguity; and thirdly, it contains no reference, express or implied, to the previous agreement.    Cow. & Hill's Notes, Vol. 4, note 295.

"The objections that the plaintiff cannot recover on the special count, because he there declares on a contract made on the 18th and 19th of June, nor on the general count, because the bill of particulars also sets forth a sale made on the 18th or 19th, are deemed untenable.    It is rather a question of ambiguity, than of variance; and were it even a question of variance, it would be only such a variance as might be disregarded under the Practice Act; especially as the defendants have not availed themselves of the objection in the manner prescribed by the Act.    Secs. 64–5.

"Under the circumstances, and as the defendants' liability admitted of question, the referees find for the plaintiff for the amount of the sale, but without interest."

The plaintiff objected to the motion to set aside the report, on the grounds that the whole testimony was not before the Court, and no case or statement of facts settled, and that the defendants were concluded by their agreement not to except to the report, &c. The Court ordered the judgment set aside, and a new trial, upon the defendants' paying all costs to that time. The plaintiff excepted, and appealed.

*J. S. Hager*, for the appellant. 1st. The parties were concluded by the order of reference, and their written agreement, by their attorneys. 2 Chit. Gen. Pr. 77; 12 Mass. 47; Holker *v.* Parker, 7 Cranch, 436; Stats. 1850, p. 48. 2d. There was no statement of facts; nor had any exceptions been taken before the referees. Old Pract. Act, secs. 162–5; 266–9. 3d. The defendants had paid money into court; there had been a verdict and new trial; and the referees having come to the same conclusion as the jury, the Court ought not to have interfered. 2 Archb. Pr. 252–7; 1 Harr. Dig. 228. 4th. The contract was in writing, with the endorsement of the defendants; and cannot be varied by parol. The last writing supersedes all others. Chit. Cont. 81–8; 1 Greenl. Ev. secs. 275–7. 5th. The contract was entire; and if the bargain was complete and binding, it passed the whole property, and the risk of loss. 6th. Under the statute of frauds, a contract for the sale of goods is valid if, either, first, it be in writing, subscribed by the parties, or their agents; second, the buyer accept or receive part of the goods; or, third, part of the purchase money be paid. Chit. Cont. 305; Stats. 1850, p. 266. 7th. Here, the writing is sufficient; and by it alone the title and risk passed, without payment or delivery. Besides, there was a symbolical delivery of the whole,—the order on the captain; and an actual delivery of 1500 bricks, either of which is sufficient. Chit. Cont. 297–308; 2 Kent. 493–503; Hill. Sales, 75, *et seq.*, 141; Story, Sales, sec. 295–312; Addis. Cont. 61–6; 7 East, 558; 12 Ib. 621. 8th. After the captain accepted the order, and delivered part of the goods, he became the bailee of the defendants, and might have been sued by them for the

goods; and the plaintiff could not have brought trover, and his right to stop *in transitu* was gone. Hill. Sales, 90. 92; Addis. Cont. 62. 68; Story, Sales, secs. 289. 340; 2 Kent, 545; Smith, Cont. 155–62. 9th. The rule that while anything remains to be done, the property does not pass, relates only to the ascertainment of the quality, quantity, price, or individuality, and then only in cases of constructive delivery. In cases of actual delivery, it does not apply. 2 Kent, 495–6; 12 East, 614; Hill. Sales, 94. 122; 12 Pick. 82.

*Burritt* and *Musson*, for the respondents. 1st. The defendants were not concluded by the stipulation, if the referees mistook the law. Parties do not, by such stipulations, bind themselves to submit to fraud, misconduct, or mistake. 3 McLean, 509; 13 N. Hamp. 72; 3 East, 25–6; 1 Taunt. 50; 1 Wash. 60. 2d. The defendants were not bound to pay till delivery,—that being the contract. So long as anything remains to be done by the vendor, the sale is incomplete, and the goods are at his risk. Story, Cont. secs. 800–1; Chit. Cont. 376; 2 Kent, 495; 6 Barnw. & Cress. 360; 5 Ib. 857; 2 M. & S. 397; 5 Taunt. 621; 7 Dow. & Ry. 131; 1 Holt, 18; 2 H. Bl. 316; 11 East, 210; 2 Camp. 240; 3 Burg. Col. & For. Laws, 496–8. 3d. Though a total price was named, a certain value was affixed to the several parcels; and the contract was therefore severable; and the delivery of 1500 bricks was not a delivery of the whole. Story, Cont. secs. 23–4; 797. 801.

Justice HEYDENFELDT delivered the opinion of the Court. The parties agreed in writing to submit the matter in dispute between them to certain arbitrators, and this agreement was filed among the papers of the case in the Court below. In addition, an order of court was granted, by the consent of the parties, referring the suit to the same persons selected by their agreement. Now, whether we view the case as an arbitration at common law, or a reference under the statute, in either case the decision must be the same; because we hold that the statute is in aid of the common law remedy by arbitration, and in no respect alters its principles.

In the case of Norris *v.* Muldrow, decided at this term we held that under our system of practice, the Court might "set aside

awards for fraud, mistake, or accident; and it makes no difference whether the mistake be one of fact or law." But we further decided, "In the case of a general finding, it appears to be well settled that courts will not inquire into mistakes by evidence *aliunde."* And from the whole tenor of the opinion in that case, it may be regarded as the settled rule, that the Court will not disturb the award of an arbitrator, or report of a referee, unless the error which is complained of, whether it be of law or fact, appears on the face of the award. And in the case of the report of a referee, our statute does not alter or interfere with this rule. It declares that the decision may be excepted to, and reviewed in like manner as if tried by the Court. The clear meaning of this is, that exceptions must be taken to the rulings of the referee during the progress of the trial, in the same manner as they are taken before a court; and then such exceptions must be embodied in the report of the referee, or made a part of his report by being properly certified by him. It follows, that in the (case of the) report of a referee, where neither the evidence is embodied, with the proper exceptions to show that he erred in fact, nor the rule of law pointed out by which he arrived at his conclusions, the Court to whom the report is made has mo right to disturb it, and must hold it final and conclusive between the parties.

It results from this opinion that the Superior Court erred in granting a new trial; and that order is consequently reversed.