## NATIONAL BANK *v.* BURKHARDT.

1. When the priority of one legal right over another, depending upon the order of events occurring on the same day, is involved, the rule that for most purposes the law regards the entire day as an indivisible unit is necessarily departed from.
2. On the afternoon of Feb. 23, 1875, A. executed to a .national bank in Cincin-. nati, Ohio, an instrument whereby he stipulated to guarantee and make good to said bank any sum or sums which might thereafter be held against B. to an amount not exceeding $50,000, and waived notice from time to .time of the amount and extent of such indebtedness. On the morning of that day C. had presented for deposit therein a check to his order drawn on said bank by B. The bank, claiming that said check was within the terms of the guaranty, brought suit against A. to recover the amount thereof. The evidence of the plaintiff tending to show that pursuant to a general and notorious usage among the banks in Cincinnati, by which checks left in the morning by depositors were held until after business hours for the purpose of examining the accounts of the drawers, B.'s check was placed aside by the teller for such examination, and ·C. informed that it would not be placed to his credit unless found good, and that, on the part of the defendant, no such usage existed, and that C. had no knowledge or understanding in regard to said check except that it was received as a deposit by the bank when left there by him, — the court charged the jury that it was for them to determine whether at the time said check was left at the bank by C. it was offered as a deposit and so received. The jury so found *Held*, 1. That the charge was not erroneous. 2. That the jury having found that said check was so offered and received, it was not a debt due .by B. within the meaning of A.'s undertaking. 3. That in view of such finding the question of usage was immaterial..

ERROR to the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. Timothy D. Lincoln* for the plaintiff in error.

*Mr. George A. Sage* and *Mr. E. W. Kittredge, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

On the 23d of February, 1875, Burkhardt, the defendant in error, executed, for the benefit of John Cinnamon, an instrument to the bank whereby he stipulated " to guarantee -and make good to said bank any sum or sums which may hereafter be held against the said John Cinnamon, to an amount not exceeding $50,000," and notice " from time to time of the amount and extent of such indebtedness " was waived.

As originally drawn, the guaranty included Cinnamon's existing as well as his future liabilities. Burkhardt refused to sign it, unless what related to the former was stricken out.

This was done by the vice-president of the bank, and Burkhardt thereupon signed and delivered the instrument. This was in the afternoon of the day above named.

The only controversy between the parties, as the case is presented here, relates to a check for $10,997, drawn by Cinnamon upon the bank, in favor of Evans, Lippincott, & Co.

It appears by the bill of exceptions that the check was presented to the bank by the payees on the day of its date, the 23d of February, 1875, and that the bank "gave evidence tending to show that when the check was so handed in it was without the pass-book, and was placed aside·by the receiving teller for examination after the close of banking hours before it should be credited; that the receiving teller had been instructed by the cashier not to credit Cinnamon's account with checks left until after the close of bank hours, when the account was examined and found good; that when the checks of Cinnamon were left on that day, the depositors were informed that they would not be passed to their credit unless found good after the close of bank hours; that there was at the time, and for a long time had been, a notorious usage in Cincinnati in receiving checks from depositors on them, and that this usage peculiarly applied to large banks, like the First National, by which checks left in the bank in the morning by depositors were held until after close of the bank, subject to be returned in the afternoon if found, upon balancing the accounts, not to be good; that such had been the usage in the First National Bank since its organization in 1861, and that it was a bank of $1,500,000 capital; and that such usage was general and notorious among the customers of the bank." And that the "defendant thereupon gave evidence tending to show that no such usage existed, and to contradict all the evidence of plaintiff in relation thereto, and in reference to any notice to the depositors in regard to Cinnamon's check as testified to by the plaintiff, and tending to show that Evans, Lippincott, & Co. had no knowledge or understanding in regard to said check, except that it was received on deposit and as a deposit when it was left with the bank."

If the check were to be considered as received on deposit when it was left with the teller, and Cinnamon was the debtor of the bank and the bank his creditor from that time, then the transaction was not within the guaranty, and Burkhardt was not liable. If, on the other hand, the bank had the right to hold the check until after bank hours, and then to make its election, and to credit the depositor and charge Cinnamon with the amount, as was done, the check was covered by the guaranty, and the bank was entitled to recover.

These alternatives were the hinges of the controversy upon the trial.

The question presented was decisive of the case. Its solution was for the jury under instructions from the court. It is insisted by the plaintiff in error that the court erred in the instructions given.

The general charge embraced topics not brought before us, doubtless for the reason that, with respect to them, both parties acquiesced in the findings of the jury. The charge was full and able. In our judgment, it was correct in every thing it touched upon, and it covered the entire case.

Having given such a charge, the court was not bound to give any further instructions, and it would have been as well if the judge had declined to give those submitted by the plaintiff in error.

It appears that they were seven in number. Only the last four are in the record. They affirm or deny, with only a change of phraseology, what had been said in the charge already given.

The jury was properly cautioned not to be misled or confused by them. There is danger of both in such cases.

The first of these special charges, as we find them in the record, was given as asked for without qualification. Nothing need, therefore, be said in relation to it.

The second one, with the addition made to it by the court, is as follows: " That if checks of John Cinnamon on the bank were left at the bank on the 23d of February, 1875, but were not passed upon by the receiving teller, or received as a deposit, nor entered in any pass-book or other book of the bank to the credit of the parties leaving them, but were laid aside

for examination until after bank hours, when an examination could be made to see whether Cinnamon's account was good, then they did not become a debt of Cinnamon to the bank until they were so passed upon and entered."

This charge the court gave, adding, "If it was handed in as a deposit, it became a deposit at the time it was received. Taking the surrounding circumstances into consideration, if it was received by the teller as a deposit, it became a deposit. That I give you, for it has these words in it, ' or received as a deposit.' "

For most purposes the law regards the entire day as an indivisible unit. But when the priority of one legal right over another, depending upon the order of events occurring on the same day, is involved, this rule is necessarily departed from. Thus, where a mortgage took effect from the time it was deposited for record on a particular day, and a judgment became a lien upon the premises on the same day, proof was received to show that the mortgage was deposited before the court sat, and it was held that the mortgage must be first satisfied. *Follett* v. *Hall*, 16 Ohio, 111. A like inquiry is involved in this case.

In Morse's well-considered work on Banking, p. 321, it is said: " But if at the time the holder hands in the check he demands to have it placed to his credit, and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit, as equivalent to an actual payment, the effect will be the same as if he had received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irrevocable."

We regard this as a sound and accurate exposition of the law upon the subject, and it rests upon a solid basis of reason. The authority referred to sustains the text.

When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the

former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned. It was well said by an eminent Chief Justice: "If there has ever been a doubt on this point, there should be none hereafter." *Oddie* v. *The National City Bank of New York*, 45 N. Y. 735.

We see no objection to the amendment made by the court to the instruction under consideration. It was correct in point of law, and it was proper to prevent any misunderstanding by the jury. It told them tersely and clearly, as the prin cipal charge had done, that if the check was offered and received as a deposit it was a deposit, and it followed as matter of law, that the bank was bound accordingly. Whether there had or had not been a consummated deposit was the ultimate fact to be found by the jury. The evidence is not, and should not have been, set forth in the bill of exceptions. All on the subject to be found there is that the parties gave evidence tending to prove what they respectively claimed. What that evidence was we do not know, and it is in no wise necessary that we should be advised upon the subject. The facts and circumstances, whatever they were, and the probative force and weight of each one, were exclusively for the consideration of the jury. The evidence may have been more or less cogent on either side, and more or less characterized in parts or in its entirety by internal conflicts and contradictions, or by other neutralizing qualifications. With all this we have nothing to do. The subject is beyond the sphere of our power and duties. We sit here to correct the errors committed by the court, if there were any, as disclosed in the record. The verdict, as the case is before us, is as if it were not. If it was wrong, the remedy was with the court below by a new trial. It cannot be administered here.

The third instruction involves substantially the same point as the second. It was given with a like addition, and an exception was taken. What we have said with respect to the second exception applies here.

The fourth and last instruction was, that if, at the bank, there had been for a long time a usage " that the receiving

teller entered checks in the pass-book, as they came in, subject to a return of the checks to the depositors if in the afternoon of the day, when the accounts were examined, the checks were found not to be good, and to return the same to the party depositing them, and such were then made good by the depositor, . . . such usage would be a valid and legal usage as between the depositors and the bank."

The court refused to give this charge as asked, but gave it as thus qualified : —

" Nothing in this case shows that Mr. Evans knew any thing about this usage.   As to the question of general usage, I have said that it was not competent to change the law in the case, when the deposit was made without any thing said about the deposit by the persons receiving the deposit, — the law made that a debt against the bank in favor of the depositor; but if the depositor knows the usage in cases of that kind, why, as a matter of course, it will change it.".

The plaintiff in error excepted.

The proposition submitted was fatally defective in not including as one of its terms that the depositors knew of the special and particular usage mentioned.   Without such knowledge it was entirely ineffectual.   The objection of the judge was conclusive.   *Moore* v. *Voughton,* 1 Stark. 396 ; 1 Chitty, Contr. 84.

The principal charge was full and clear in regard to the general usage or custom insisted upon by the plaintiff in error. Upon that subject the judge, among other things to the like effect, remarked : " It is said by the plaintiff, by way of proof, that although there was no express agreement between Evans, Lippincott, & Co., the depositors of this check, and the bank, that it should be returned in case it should not be found good at three o'clock, or shortly thereafter, yet that there was a general usage among bankers of the city of Cincinnati of that character, which extended to all their customers, and, therefore, it had become a law.   The question of usage, as presented here, is undoubtedly a very important question, and as a general proposition of law every commercial contract is entered into with the understanding that the usage in regard to the particular matter of the contract becomes a part and parcel of the contract itself."

A large part of the able and elaborate argument of the counsel for the plaintiff in error was addressed to this point. In our view, conceding the usage to have been established, it was in no wise material as a factor in the case.

The verdict of the jury, by rejecting the claim of the bank touching the check, established the fact that the deposit became complete by the agreement of the parties when the check was handed in. As a necessary consequence, it was not within the undertaking of Burkhardt. Usage, therefore, could have had no effect upon the rights of the parties, and was immaterial. The result of the case must have been the same as if that subject had not been drawn in question.

A general usage may be proved in proper cases, to remove ambiguities and uncertainties in a contract, or to annex incidents, but it cannot destroy, contradict, or modify what is otherwise manifest. Where the intent and meaning of the parties are clear, evidence of a usage to the contrary is irrelevant and unavailing.

Usage cannot make a contract where there is none, nor prevent the effect of the settled rules of law. *Barnard* v. *Kellogg,* 10 Wall. 390; *Bliven* v. *New England Screw Co.,* 23 How. 433; *Collender* v. *Dinsmore,* 55 N. Y. 200; *Adams* v. *Goddard,* 48 Me. 212; *Thompson* v. *Riggs,* 5 Wall. 674; *Dykers* v. *Allen,* 7 Hill (N. Y.), 497.

These considerations apply to the posture of the case as it was found to be by the verdict of the jury, under instructions, properly given, by the court. According to those tests, the contract was clear, complete, and irrevocable when the check was delivered by one party and received by the other. After that there was nothing left for usage to do. Its aid, when the controversy arose, was invoked too late. If the bank proposed to hold the check on conditions, it was but fair and just to the other party to have said so when it was received, and thus have given him the option, after such notice, to do with it as he might think proper. The saving or loss of the amount to the payees might have depended on the promptitude and energy of their conduct. Delay until after bank hours might have determined the result inevitably against them. It would be contrary to plainest principles of reason and justice to permit a

bank, under such circumstances, to shift the burden of the loss from itself to the shoulders of an innocent depositor.

It does not appear by the record that any evidence offered by the bank, touching the general usage, was excluded, and we think what was said by the court in that connection, as well as with respect to the special usage of the institution, was unexceptionable, and was quite as favorable to the bank as it had a right to claim.

. If either side had ground for complaint, it was not the plaintiff in error.

*Judgment affirmed.*