The American Exchange National Bank

*v.*

William M. Gregg *et al.*

*Filed at Ottawa October 31, 1891.*

1. Bank check—*what amounts to payment.* Where a bank accepts a check drawn on it, stamps the same as paid, and enters the amount thereof to the credit of the holder presenting it, this will be a payment of the check, although the bank may fail to charge the account of the drawer on its books with the amount. After such payment the bank will have no authority to charge back the amount of the check to the depositor, or his account, without his consent.

2. Same—*acceptance by bank as a deposit—correctness of books of the bank.* Where a check of a third person is offered to the bank on which it is drawn, as a deposit, and is received as such, if the check is genuine, in the absence of fraud, the bank will become the debtor of the depositor, and the title to the deposit will pass to the bank, and the transaction will be conclusive and executed as between the depositor and the bank; and this will not be dependent upon the correctness of the books of the bank.

3. Bank—*refusal to pay overdraft—error in books.* A bank may refuse payment of a check of a depositor which will overdraw the amount of the funds of the drawer on deposit, although the bank book may show on its face a sufficient sum, for want of the entry therein of a

check drawn thereon a few days before. The right to demand payment of a depositor's check depends upon the actual state of his bank account at the time of presentment and demand, rather than upon what the bank books may then show.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. SWIFT, CAMPBELL & JONES, for the appellant:

A bank is under no legal liability for refusing to certify a check drawn on it. The only act the bank is required to do is to pay it. Morse on Banks and Banking, (3d ed.) sec. 453; *Addie* v. *Bank*, 45 N. Y. 735; *Bank* v. *Burkhardt*, 100 U. S. 686; *Pratt* v. *Foote*, 9 N. Y. 464.

We claim that when a check is presented to a bank, the bank may refuse to pay it if the customer's account, upon a balance being struck at the time of the demand, would not show a credit balance sufficient to pay the check. Morse on Banks and Banking, sec. 311.

Messrs. BISBEE & REED, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees, Gregg, Son & Co., on a check for $7000, which was dated June 15, 1887, drawn on the American Exchange National Bank of Chicago, by C. J. Kershaw & Co., payable to the order of Gregg, Son & Co. The declaration contained a special count on the check, in which it was averred that the bank refused to pay the check, although it had money on deposit to the credit of C. J. Kershaw & Co. when payment was demanded. The declaration also contained the common money counts and a count on an account stated.

It appears from the record that the check was received by Gregg, Son & Co. on the morning of June 15, 1887, and at

eleven o'clock of that morning it was presented to the bank, with a request that the bank certify the check. This being refused, about ten minutes later the check was again presented, and a demand again made for certification or payment, which was also refused. At the close of business in the afternoon of June 14, the books of the bank showed a credit balance to the account of C. J. Kershaw & Co. of $11,401.17, and on the morning of June 15, Kershaw & Co. deposited to their credit $399,200. There were therefore sufficient funds in the bank to the credit of Kershaw & Co., as appeared from the books of the bank, to pay the check when payment was demanded, unless the bank had the right to deduct from the account of Kershaw & Co. a certain check for $256,800, which had been drawn on the bank by Kershaw & Co., in favor of D. Eggleston & Son, on June 13, two days before. This check, on the afternoon of June 13, was taken to the bank by D. Eggleston & Son, properly endorsed by them. The bank accepted the check, stamped it, paid it, and placed the amount thereof to the credit of D. Eggleston & Son. But the bank did not then charge the check to the account of Kershaw & Co. If the bank had charged the check to the account of Kershaw & Co., their account would have been largely overdrawn. It also appears that on the afternoon of June 14 the bank charged back the check for $256,800 to the account of D. Eggleston & Son, but the evidence fails to show any authority for this action from D. Eggleston & Son.

The attorneys for appellant have argued at some length, in their brief and argument filed in this court, the questions of fact; but as we do not review controverted questions of fact, it will serve no useful purpose to allude to that branch of the argument further than may be necessary to pass upon the ruling of the court on the instructions to the jury.

Several grounds have been urged for a reversal of the judgment, but in the view we take of the record but one question need be considered.

On the trial appellant requested the court to give the following instruction, which the court refused, and an exception was taken:

"On behalf of the defendant the court instructs the jury, that if the jury find, from the evidence, that D. Eggleston & Son kept a bank account with defendant, and that the check of Kershaw & Co. to D. Eggleston & Son for $256,878.18 was credited by defendant to the account of D. Eggleston & Son on June 13, 1887, such crediting of the check to the account of Eggleston & Son amounted, in law, to a payment of the check by defendant, and defendant had the right to charge said check to the account of Kershaw & Co. before paying the check in this suit. And if the jury find, from the evidence, that defendant charged back the check for $256,878.18 to the account of D. Eggleston & Son on June 14, still the right of defendant to charge to the account of Kershaw & Co. the check for $256,878.18 before paying the check in suit would not be changed, unless the jury further find, from the evidence, that D. Eggleston & Son consented to the charging back of the check to their account on June 14. The mere fact that the check for $256,878.18 was not charged to Kershaw & Co. on the books of defendant till after the check in suit was presented, if the jury find such to be the fact, will not entitle plaintiffs to recover, unless the jury find, from the evidence, that after charging to Kershaw & Co. the check for $256,878.18 there was sufficient money to the credit of Kershaw & Co. to pay the check in suit."

As has been seen, the check Kershaw & Co. gave to D. Eggleston & Son was presented to the bank for payment, properly endorsed by the payees. The bank received the check, stamped it, paid it, and placed the amount thereof to the credit of D. Eggleston & Son upon the books of the bank. This must be regarded as a payment of the check. The transaction was as complete a payment as if the bank, when the check was presented, had paid in money the amount thereof

into the hands of D. Eggleston & Son, and they, in turn, had deposited the money in the bank to their credit. When the check was presented and accepted by the bank and cancelled,. and deposited to the credit of D. Eggleston & Son, as between the depositors and the bank the transaction was closed, and the bank had no authority afterwards, without the consent of D. Eggleston & Son, to charge the check back to their account.. That act, without such consent, was a nullity.

In *Addie* v. *National City Bank*, 45 N. Y. 735, the court, in discussing a transaction of this character, says : "Here the plaintiffs clearly put in the check as a deposit, and the defendant as clearly received it as such, and credited plaintiffs. with it. The credit on the deposit ticket was as significant an act, evincing the consent of the defendant to the payment of it, as if made upon the pass-book of the plaintiffs and entered upon the books of the bank. Financial business is transacted at banks in large amounts with great rapidity, but according to definite and certain rules, which are well understood and. acted upon by those engaged in the business. Very little is said but very much is understood, and there is an absence of all formalities which tend to embarrass the facility of doing the business. In determining the legal effect of such transactions we must apply the same rules applicable to all contracts and business affairs, and carry out the intention of the parties, to be gathered from their acts and declarations and the accustomed and understood course of the particular business.. Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiffs as a deposit. The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiffs. and then deposited. When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive

it conditionally, as in *Pratt* v. *Foote*, 9 N. Y. 463; but if it accepts such a check, and pays it, either by delivering the currency or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine."

In Morse on Banking, page 321, it is said: "But if, at the time the holder hands in the check, he demands to have it placed to his credit, and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit as equivalent to an actual payment, the effect will be the same as if he had received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irrevocable."

In *Bank* v. *Burkhardt*, 100 U. S. 686, the quotation from Morse and the case of *Addie* v. *National City Bank* are quoted with approval, and the doctrine therein announced fully sanctioned. Where a check is offered as a deposit, and received as such, the check being genuine, in the absence of fraud the bank becomes the debtor of the depositor, and the title of the deposit passes to the bank, and no reason is perceived why the transaction should not be conclusive and an executed one between the two parties. Indeed, any other rule would embarrass the transaction of business between banks and their depositors.

From what has been said, if we are correct, it follows that the court erred in refusing the instruction.

Something has been said in regard to the fact that the check given to D. Eggleston & Son had not been actually charged to Kershaw & Co. on the books of the bank until after the check involved was presented and payment demanded. We do not regard this as a controlling element in the case. This was a matter of book-keeping, and the rights of the parties are not to be determined merely from the manner in which books are kept. When the check in question was presented, the question

was, whether Kershaw & Co. at the time had funds in the bank sufficient to pay it. If they had, the bank was bound to pay the check; otherwise not. In determining this question the bank had the right to take into consideration a check drawn by Kershaw & Co., which had in good faith been previously paid, although such check remained on a spindle in the bank and had not been entered up by the book-keeper. In other words, when a check is presented to a bank for payment, the bank will take into consideration all the funds which it has received from the drawer subject to check to that time, and the total amount of all sums up to that time which it has paid out on his account. A balance thus ascertained will determine the obligation of the bank to pay or its right to refuse payment, regardless of the fact whether the amounts deposited or the checks paid may have reached the bank ledger or not.

For the errors indicated the judgments of the Appellate and circuit courts will be reversed, and the cause will be remanded to the circuit court.

*Judgment reversed.*