[S. F. No. 7020. Department One.—December 29, 1916.]

## UTAH CONSTRUCTION COMPANY, Appellant, v. WESTERN PACIFIC RAILWAY COMPANY, Respondent.

Arbitration and Award—Judgment—Appeal.—In arbitration proceedings, the code does not permit a separate appeal from the judgment entered on the award, even though the entry occurs after a decision on a motion to vacate made under sections 1287 and 1288 of the Code of Civil Procedure, as the only appeal allowable is from the decision on the motion.

Id.—Unqualified Submission of Controversy—Setting Aside of Award.—An award made upon an unqualified submission will not be set aside on the ground that it is contrary to law, unless error appears on the face of the award and causes substantial injustice.

Id.—Submission on Terms—Rule.—A different rule obtains where the arbitrators are required by the terms of the submission to determine the rights of the parties according to law, as in such a case a failure to so determine is sufficient ground to avoid the award.

Id.—Entry of Submission Agreement as Court Order—Arbitrator not Judge Pro Tempore.—An agreement that a submission to arbitration shall be entered as an order of court under section 1283 of the Code of Civil Procedure does not make the arbitrator a judge *pro tempore* of the superior court under section 8, article VI, of the constitution, as amended.

Id.—Review of Award—Appeal—Sufficiency of Evidence.—Upon an appeal taken in an arbitration proceeding, the sufficiency of the evidence to sustain the award will not be reviewed, unless otherwise provided by the terms of the submission agreement, as the provisions of section 1287 of the Code of Civil Procedure do not authorize the appellate court to consider the weight of the evidence

or to overrule the arbitrator where he has drawn reasonable inferences from the facts proven.

ID.—PAYMENT OF INDEBTEDNESS BY CHECKS—DEPOSIT WITH PAYEE BY COLLECTING BANK—GIVING OF CREDIT—DISCHARGE OF DRAWER.— Where a railroad corporation in good faith draws checks upon a bank in which it has money on deposit and delivers them to a construction company in payment of an indebtedness, and the latter company indorses the checks to another bank for collection, but the latter bank, instead of cashing them, deposits the checks in the bank upon which they were drawn and in which the bank kept a deposit account, and takes credit for the amount thereof for its own purposes, the railroad company is exonerated, even though the drawee is insolvent.

ID.—CREDIT FOR CHECK—PAYMENT.—A credit given for the amount of a check by the bank upon which it is drawn is equivalent to and will be treated as payment thereof.

ID.—KNOWLEDGE OF INSOLVENCY OF DRAWEE—OFFICER OF BANK— NOTICE NOT IMPUTABLE TO DRAWER.—Knowledge of the insolvency of the drawee cannot be imputed to the drawer by reason of the fact that the president of the drawee was also treasurer of the drawer, where such officer had no control of the money of the drawer, and the duties as treasurer gave him no knowledge of such insolvency.

ID.—DEPOSIT OF CHECK WITH DRAWEE—CREDIT OF DEPOSITOR—LACK OF NOVATION BETWEEN DRAWER AND DRAWEE.—The delivery of a check to a payee, who indorses it to his bank for collection, and which the bank in turn deposits to its credit with the drawee, is not a novation, as to drawer and drawee.

ID.—DELAY IN PRESENTMENT OF CHECK—EXONERATION OF DRAWER— RULE WHEN INAPPLICABLE.—The provision of section 3255 of the Civil Code exonerating drawers of checks from liability applies only where there has been delay in presentment, and not to cases in which a check has been presented to the drawee and its credit accepted in lieu of cash.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a motion to vacate an award in arbitration proceedings. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Gavin McNab, B. M. Aikins, R. P. Henshall, and Luther Elkins, for Appellant.

Warren Olney, Jr., O. K. McMurray, F. W. McCutcheon, John S. Partridge, and A. R. Baldwin, for Respondent.

SHAW, J.—A controversy existed between the plaintiff and the defendant with regard to a claim by the plaintiff that the defendant was indebted to it in the sum of $236,735.28, on account of the construction by the plaintiff of the defendant's railroad, and the claim of the defendant that such indebtedness had been discharged by the execution and delivery to the plaintiff by defendant of fifteen checks aggregating $153,562.24 and nine checks aggregating $83,175.04 upon the California Safe Deposit and Trust Company, bearing date October 22, 1907. On April 29, 1910, the parties agreed in writing to submit said controversy to Charles P. Eells as arbitrator. The agreement empowered him to hear the evidence, judge and determine said controversy, and make a final award thereon which should be a complete and final adjudication of all the matters so submitted, and provided that the submission should be entered as an order of the superior court of the city and county of San Francisco, in accordance with section 1283 of the Code of Civil Procedure. Pursuant to this agreement the parties produced evidence, submitted the matter, and the arbitrator made his award thereon declaring that the plaintiff take nothing and that the defendant should have judgment for its costs incurred in the proceedings. This award, signed by the arbitrator, was delivered to the parties and filed with. the clerk of said court on April 19, 1913, and a note thereof was thereupon made in the clerk's register. Notice of such filing was served on the plaintiff. On April 23, 1913, the plaintiff duly served and filed a notice of motion in the superior court to vacate and set aside the award. This motion was denied on September 24, 1913. On September 27, 1913, the award was regularly entered by the clerk as a judgment in the judgment-book of said court. The plaintiff has filed two notices of appeal, one from the judgment entered by the clerk upon the award, the other from the order of the superior court denying the motion to vacate the award.

The respondent contends that no appeal lies from the judgment entered by the clerk upon the award of the arbitrator. The judgment here involved was entered by the clerk but the entry was made after the decision by the court on the motion to vacate the award. Section 1289 of the Code of Civil Procedure provides that "The decision upon the motion is subject to appeal in the same manner as an order which

is subject to appeal in a civil action; but the judgment entered before a motion made cannot be subject to appeal." This embraces the motions authorized by sections 1287 and 1288 only.

We are of the opinion that the code does not allow a separate appeal from the judgment entered upon the award. The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing. The statutory provisions for a review thereof are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding. The design was to avoid useless proceedings and to make the practice simple and as speedy as would be consistent with justice. In *Peachy* v. *Ritchie,* 4 Cal. 205, 207, it is said that the statute providing for the review of such awards "gives to the parties no higher rights than they might have asserted in a court of equity in case of mistake, fraud or accident." It has also been said that "by reason of the fact that the proceeding represents a method of the parties' own choice and furnishes a more expeditious and less expensive means of settling controversies than the ordinary course of regular judicial proceedings, it is the policy of the law to favor arbitration. Therefore every reasonable intendment will be indulged to give effect to such proceedings." (5 Cor. Jur. 20; *Fluharty* v. *Beatty,* 22 W. Va. 698, 705; *Payne* v. *Crawford,* 97 Ala. 604, 607, [11 South. 725]; *Wilson* v. *Wilson,* 18 Colo. 615, 620, [34 Pac. 175]; *Russell* v. *Smith,* 87 Ind. 457; *Groat* v. *Pracht,* 31 Kan. 656, [3 Pac. 274]; *Snyder* v. *Rouse,* 58 Ky. (1 Met.) 625, 627; *Mickles* v. *Thayer,* 96 Mass. (14 Allen) 114, 119; *Brush* v. *Fisher,* 70 Mich. 469, 473, [14 Am. St. Rep. 510, 38 N. W. 446]; *Tucker* v. *Allen,* 47 Mo. 488, 490; *Caldwell* v. *Brooks Elevator Co.,* 10 N. D. 575, 580, [88 N. W. 700]; *Bishop* v. *Valley Falls Mfg. Co.,* 78 S. C. 312, 315, [58 S. E. 939]; *Jensen* v. *Deep Creek etc. Co.,* 27 Utah, 66, 75, [74 Pac. 427].) In view of this policy of the law the reasonable conclusion is that section 1289 was intended to cover all the methods of review by appeal in arbitration proceedings. Where the submission is unqualified, an award cannot be set

aside by the superior court, or by the court on appeal, on the ground that it is contrary to the law or the evidence, unless the error appears on the face of the award.  (*Carsley* v. *Lindsay*, 14 Cal. 390, 395.)   The same rule prevails generally. (5 Cor. Jur. 161.)   Where a motion, under section 1288, to modify or correct the award, is granted, the order should, of course, direct the judgment to be entered.  In that case the appeal from the decision on the motion would embrace the judgment so entered and would authorize a review of it for any errors on the face of the record and subject to review by the terms of the submission.   If a motion, under section 1287, to vacate the award, is granted, the appeal from the order granting it will afford the aggrieved party all the relief he is justly entitled to.   If such motion is denied and the award has not then been entered by the clerk as a judgment, as provided in section 1286, but is entered afterward, the order refusing to vacate the award is equivalent to an order directing a judgment on the award, and the judgment then entered by the clerk will also be embraced in the appeal from the decision on the motion and errors therein apparent on the face of the record, and made subject to review by the submission, may be reviewed on such appeal.   And in any case where an appeal is taken from a decision denying the motion, whether to vacate, correct, or modify the award, such appeal must, of necessity, embrace any judgment on the award, whensoever entered, and make it subject to review for errors on its face. It is clear, therefore, that there is no necessity for a direct appeal from such judgment.   Such appeal would be futile. No reason can be found for denying a direct appeal from a judgment on the award entered by the clerk before a decision on a motion made, and allowing it when the clerk enters it after such decision.   The legislature, as we believe, did not intend such distinction, but intended to allow appeals only from the decision on the motions provided for in sections 1287 and 1288.   We will therefore consider only the appeal from the decision on the motion.

The code provisions are in aid of the common-law remedy of arbitration, a reaffirmance thereof, and do not alter its principles.   (*Muldrow* v. *Norris*, 2 Cal. 74, 77, [56 Am. Dec. 313] ; *Tyson* v. *Wells*, 2 Cal. 122, 130; *Headley* v. *Reed*, 2 Cal. 322, 325; *Peachy* v. *Ritchie*, 4 Cal. 205.)   An award made upon an unqualified submission cannot be impeached on the

ground that it is contrary to law, unless the error appears on its face and causes substantial injustice. (*Carsley* v. *Lindsay*, 14 Cal. 390; Morse on Arbitration, 296.) A different rule is applicable here because of the terms of the submission. "Whenever the arbitrators are required, by the terms of the submission . . . to determine the rights of the parties according to law, a plain mistake in their construction of the law is sufficient ground upon which to avoid the award. . . . In the absence of special requirements the arbitrators are not bound to decide according to law." (5 Cor. Jur. 183; Id. 172; Morse on Arbitration, 300.) The latter statement would probably not be applicable in this state, even upon an unqualified submission, if the mistake of law appears on the face of the award. (*Tyson* v. *Wells,* 2 Cal. 122; *Muldrow* v. *Norris,* 2 Cal. 74, [56 Am. Dec. 313].) The submission in this case was not without qualification. The second paragraph of the agreement provided that if the arbitrator should find that the defendant did not discharge the debt by the checks in question, he should determine whether "in equity and fairness," upon all the circumstances, it should be required to pay interest upon the debt, and the plaintiff agreed to abide the decision on that point and waive its legal right to interest to the extent of the abatement thereof. The seventh paragraph, referring to the same subject, provided that the arbitrator should "make his judgment and award, according to the legal right of the parties except as to the matter of interest, which shall, as hereinafter provided, be determined in accordance with equity and fairness under all the circumstances of the case." It further provided that the arbitrator might appoint a stenographer to report the evidence, that after the parties had filed their briefs he should make his award in writing, stating separately the facts found and conclusions of law, and should attach thereto a transcript of the proceedings and evidence taken before him. All this was done.

There is no merit in the suggestion that the submission constituted the arbitrator a judge *pro tempore* of the superior court, under the amended section 8, article VI, of the constitution. The submission made him an arbitrator, not a judge. The award being for the defendant, the matter of interest is eliminated. As to all other matters, the provisions above mentioned bound the arbitrator to decide in con-

formity with the law, and left him without authority to do otherwise. (5 Cor. Jur. 183; Morse on Arbitration, 302.)

Section 1287 of the Code of Civil Procedure provides that the superior court, on motion, may vacate an award and may order a new hearing before the same arbitrator, or not, in its discretion, on the grounds: "1. That it was procured by corruption or fraud; 2. That the arbitrators were guilty of misconduct, or committed gross error in refusing, on cause shown, to postpone the hearing, or in refusing to hear pertinent evidence, or otherwise acted improperly, in a manner by which the rights of the parties were prejudiced; 3. That the arbitrators exceeded their powers in making their award; or that they refused, or improperly omitted, to consider a part of the matters submitted to them; or that the award is indefinite, or cannot be performed." No motion was made to modify or correct the award as provided in section 1288; therefore its provisions are immaterial.

The grounds of the motion to vacate the award were, in substance, as follows: (1) That the award and the findings of fact on which it was based were contrary to the evidence. (2) That it was against law. (3) That the arbitrator committed gross error and was guilty of misconduct (a) in failing to consider the evidence of the financial condition of the California Safe Deposit and Trust Company from October 22 to October 30, 1907, and of the money it had on hand and of its ability to pay the checks in controversy, during said period (b) in failing to consider evidence upon the question whether or not it would have paid the checks if they had been presented for payment, (c) in failing to consider the evidence of the debit and credit entries made by such company on its books concerning said checks. Under the first ground the notice of motion specifies ten particulars in which it is claimed the evidence does not support the special findings of fact upon which the award is based.

Neither the terms of the submission, nor the provisions of section 1287, authorize us to consider the weight of the evidence or to overrule the arbitrator where he has drawn reasonable inferences from the facts proven. There is no foundation for the claim that the arbitrator refused to consider the evidence, or any part thereof, or that his findings are contrary to the evidence. They are fully sustained by the evidence and the inferences legitimately arising therefrom. No

mistake of law appears, so far as his consideration of the evidence and its sufficiency is concerned. We cannot inquire further on these subjects. (*Pratt* v. *Connor,* 128 Cal. 279, 282, [60 Pac. 862]; *Peachy* v. *Ritchie,* 4 Cal. 205.)

The only questions remaining for consideration arise out of the claim that, under the qualification of the submission above mentioned, a mistake in the conclusions of law upon the findings should be considered a mistake appearing upon the face of the award, and good ground for vacating it if it affects the substantial rights of the plaintiff on the merits of the case, the theory being that, in that event, as he did not decide according to the legal right, he has exceeded his limited power under the agreement in making the award as he did. Our final conclusion on the merits renders it unnecessary to determine whether the submission agreement, when properly construed, did or did not empower him to decide the law wrongly as well as rightly. We may assume, for the purposes of the case, that he was empowered only to decide correctly as to the law, and proceed upon that theory without deciding the point.

The facts on which the decision of the case depends are as follows: The Western Pacific Railway Company on October 23, 1907, owed the Utah Construction Company $236,735.28. It kept money on deposit with the California Safe Deposit and Trust Company, which was doing a general banking business in San Francisco. It drew twenty-four checks in various sums aggregating said amount, each dated October 23, 1907, payable to the Utah company, upon said Safe Deposit Company and forwarded them by mail from San Francisco to said Utah company, at Ogden, Utah. They were received there and by the Utah company indorsed to the First National Bank of Ogden, for collection only. Said Ogden bank at that time kept a deposit account with said Safe Deposit Company. The said Ogden bank forwarded the checks to the Safe Deposit Company with instructions to credit the same to its account upon the books of said Safe Deposit Company. Upon receipt of these advices the said Safe Deposit Company charged the amount of the checks against the railway company on the books of said Deposit Company and entered the same as a credit upon the account of said Ogden bank on its books. The railway company then had deposits more than sufficient to cover the checks. All this was done prior to 2

o'clock in the afternoon of the thirtieth day of October, 1907. Said Safe Deposit Company was during all this time, and for a long time previous thereto, insolvent, but this fact was unknown to the Utah company, the railway company, and the Ogden bank.   On the day last named, shortly after 2 o'clock in the afternoon, said Safe Deposit Company closed its doors and suspended its banking business.   Its assets were insufficient to pay its depositors.   Upon ascertaining these facts, the Utah company demanded of the railway company payment of the amount of the checks and the debt aforesaid.   At the time said checks were drawn the customary course of business of the Utah company, with respect to checks it received from the railroad company on said Safe Deposit Company, was to deposit the same with the said Ogden bank for collection from said Safe Deposit Company in San Francisco, by obtaining credit in the manner above detailed.   The railway company was aware of this custom.   The checks, however, were sent in due course of business and there was no direction, order, or understanding by the railway company that they should not be presented to the Safe Deposit Company for payment in money, or that they should be presented for credit only by said Ogden bank with said Safe Deposit Company.   At the time these checks were presented to the Safe Deposit Company and credited by it on its books to the Ogden bank, as directed, the Safe Deposit Company had on hand cash and cash resources immediately available sufficient to pay all of the said checks and would not have refused to do so if payment had been then demanded.

Upon these facts, as said by the learned arbitrator, "the case would seem to turn upon the single question whether the First National Bank of Ogden, plaintiff's agent, having the opportunity to cash these checks and preferring to deposit them and to take credit for the amount for its own purposes, thereby exonerated the drawer, notwithstanding the insolvency of the bank on which they were drawn; the checks having been drawn by defendant and received by plaintiff in good faith."   There is no doubt in our minds that the arbitrator correctly decided this question in the affirmative.   "A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check.   It is the same as if the money had been paid over the counter on the check, and then immedi-

ately paid back again to the account or for the use for which the credit is given.'' (2 Morse on Banks and Banking, sec. 451; *Oddie* v. *National City Bank,* 45 N. Y. 735, [6 Am. Rep. 160]; *Bartley* v. *State,* 53 Neb. 310, 337, [73 N. W. 744]; *American Exchange Nat. Bank* v. *Gregg,* 138 Ill. 596, [32 Am. St. Rep. 171, 28 N. E. 839]; *First Nat. Bank* v. *Burkhardt,* 100 U. S. 686, [25 L. Ed. 766]; *City Nat. Bank* v. *Burns,* 68 Ala. 267, [44 Am. Rep. 138].) ''The giving of credit is practically the same as paying the money to the depositor and receiving the cash again on deposit.'' (2 Morse on Banks and Banking, sec. 569.) ''When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, but if it is received as a deposit, there being no fraud or lack of good faith and the check being genuine, and is credited to the depositor, it will operate as a payment.'' (7 Cyc. 1008.) The rule is the same where the holder of the check obtains credit by having the bank certify the check; the drawer is discharged. (5 Am. & Eng. Ency. of Law, 1055.) The fact that the Safe Deposit Company was insolvent at the time of these transactions, they having been made in good faith and the insolvency being unknown to all the other parties, does not change the effect of the conduct of the Bank of Ogden in taking credit with the Safe Deposit Company instead of demanding payment. (*First Nat. Bank* v. *Currie,* 147 Mich. 72, 82, [118 Am. St. Rep. 537, 11 Ann. Cas. 241, 9 L. R. A. (N. S.) 698, 110 N. W. 499].) ''An indorsee may always insist that the conditions requisite to make his undertaking enforceable shall be strictly complied with, namely, presentment for payment and notice of dishonor.'' (Id.) The drawer of a check has the same rights. (Civ. Code, secs. 3177, 3254, 3255.) The presentation of the check and the acceptance of credit instead of payment was a waiver of payment. The railway company did not authorize the taking of credit. That act created the relation of debtor and creditor between the Safe Deposit Company and the Ogden bank and satisfied the check. The railway company cannot be held responsible because of the fact that, unknown to both parties, the Safe Deposit Company was insolvent and has been unable to pay, and has not paid, its debt to the Ogden bank. The fact that the railway company was aware of the custom of the Utah company to collect checks by creating such indebtedness, instead of exacting payment, does not make the rail-

way company a guarantor of that indebtedness nor otherwise responsible for its payment.

· The plaintiff insists that "the giving of a check upon an insolvent bank is not a payment of the debt for which it is taken." This may be admitted. A check is never a payment of the debt for which it is given until the check itself is paid or otherwise discharged, unless expressly agreed to be taken in payment. (Morse on Banks and Banking, secs. 543, 544.) But here the checks, though not agreed to be taken as payment, were satisfied by the taking of credit therefor. This satisfaction exonerated the railway company, regardless of the solvency or insolvency of the drawee.

The finding that the Safe Deposit Company could and would have paid the checks in cash, had payment been insisted on, conceding it to be material, is based on inferences which we cannot say are unreasonable, even if we could inquire into such matters. Hence we cannot disturb the finding.

The fact that Brown was president of the Safe Deposit Company and also treasurer of the railway company, and that he had, as president, personal knowledge of the insolvency of the Safe Deposit Company, does not make that knowledge imputable to the railway company. He did not control the money of the railway company, nor cause it to be deposited in the Safe Deposit Company, nor have power to do so. That matter was controlled by the latter's board of directors. The duties of Brown as treasurer of the railway company gave him no knowledge of the insolvency of the Safe Deposit Company. His knowledge was not communicated to the former, and therefore cannot be charged to it. (*Lothian* v. *Wood,* 55 Cal. 159, 162; *Wittenbrock* v. *Parker,* 102 Cal. 93, 102, [41 Am. St. Rep. 172, 24 L. R. A. 197, 36 Pac. 374] ; *Iverson* v. *Metropolitan etc. Ins. Co.,* 151 Cal. 746, 750, [13 L. R. A. (N. S.) 866, 91 Pac. 609] ; 2 Cor. Jur. 863.)

Plaintiff also invokes section 1533 of the Civil Code, relating to novation. A novation is the substitution of a new obligation for an existing one. (Civ. Code, sec. 1530.) The clause of section 1533 relied on provides that a rescission of a contract of novation may be made, when an order of a third person "is accepted *in satisfaction,*" if at the time the order is received the third person on whom it is drawn is insolvent and the fact is unknown to the creditor. The checks of the railway company were not given as payment nor "accepted

in satisfaction'' of its debt. They were given merely as a convenient mode of payment, and were to operate as payment and satisfaction only in the event that they were paid or otherwise satisfied. The giving and acceptance of the checks was, therefore, not a novation. The only novation that took place was that between the Ogden bank and the Safe Deposit Company when the former accepted the obligation of the latter in the place of and in discharge of the checks. To that novation the railway company was not a party. A rescission thereof by the two banks and the plaintiff could not place the railway company *in statu quo,* nor revive its extinguished liability on the checks. Section 1533 has no application to the case.

It is also contended that since, under section 3255 of the Civil Code, the drawer of a check is exonerated by delay in its presentment only to the extent that he suffers injury thereby, and as the Safe Deposit Company was, at the time of presentment, and ever since has been, hopelessly insolvent, the railway company has suffered no injury by the delay and is not exonerated. This argument loses sight of the fact that the arbitrator has found that payment could have been made if it had been insisted on. But in any event the section applies only to a case where there has been delay in presentment, not to a case where there was a presentment to the drawee and credit with the drawee was accepted in lieu of cash.

We find no other points deserving of notice.

The judgment and order are affirmed.

Sloss, J., and Lawlor, J., concurred.