Argued at Pendleton July 26, reversed September 25, argued on
   rehearing November 27, 1923, reversed January 14, motion
   to recall mandate denied March 4, 1924.

# STATE EX REL. SCHOOL DIST. No. 8, UMATILLA COUNTY, v. GOFF ET AL.

### (218 Pac. 556; 221 Pac. 1057.)

**Schools and School Districts—Organization of Union High School
   from Districts of Different Grades not Permitted by Statute.**

1. Section 5305, Or. L., as amended by Laws of 1921, page 594,
providing for the formation of a union high school by uniting
several districts of the third class, does not permit the formation
of a union high school from one district of the third class and
other districts not of that grade as so doing would require striking
out the words "third class" from the statute.

**Elections—Law Permits Legal Voters to Vote on Organization of
   Union High School District, Though not Taxpayers.**

2. Every legal voter residing in the district has the right to
vote on the question of the organization of a union high school
district, irrespective of the fact that such voter is not a taxpayer.

### ON REHEARING.

**Schools and School Districts—Two School Districts cannot Exist in
   Same Territory at Same Time.**

3. No two governmental *quasi* corporations, such as two school
districts, can exist for the same purpose in the same territory at
same time.

**Schools and School Districts—Formation of New District on Same
   Day Former One Dissolved Held not to Indicate Both in Existence at Same Time.**

4. That judgment dissolving high school district was rendered
same day petitions were filed with boundary board asking for
formation of new high school, in which districts were identical
with previous one, *held* not to indicate that previous district was
in existence when new proceeding was commenced.

**Schools and School Districts—Property Qualification not Requisite
   of Elector on Organization of High School District.**

5. Section 5298, Or. L., defining legal voters in school districts
as those who can legally vote for school officers in their respective
districts, means that the definition of legal voters who can so
vote is to be found in the law prevailing at the time the voter
exercises his franchise, whenever or wherever enacted; and therefore,
on the question whether petitioners for a high school district must
have property qualifications, *held* that Section 5140, defining voters
in school districts, and providing that property qualifications imposed
by that section shall not apply in the election of school
directors and clerks, governed, rather than Section 5298.

Quo Warranto—School Districts not Authorized to Act as Relators in Quo Warranto.

6. School districts are not authorized to engage in litigation as relators in *quo warranto* to require high school district to show authority for formation by uniting relator with other school districts.

Quo Warranto—Private Citizen may Institute Quo Warranto Against High School District and Officers.

7. Private citizens may bring *quo warranto* against a high school district and its officers to require them to show respectively by what authority it existed and they exercised powers of officers thereof.

Estoppel—Director not Estopped from Bringing Quo Warranto to Show Authority for Formation of High School District.

8. In *quo warranto* to require showing of authority for formation of high school district, defense that director of district assisted in incurring indebtedness, on account of which he should be estopped from acting as relator did not show that defendants were damaged in any proceeding because of director's conduct, and if constituting defense it was only *pro tanto* so far as affecting other relators.

From Umatilla: Fred W. Wilson, Judge.

In Banc.

                                                    Reversed.

For appellants there was a brief over the names of *Mr. Roscoe I. Keator,* District Attorney, *Mr. James D. Zurcher, Messrs. Fee & Fee* and *Mr. S. A. Lowell,* with oral arguments by *Mr. Lowell* and *Mr. James A. Fee, Jr.*

For respondents there was a brief over the names of *Messrs. Raley, Raley & Steiwer, Mr. William J. Warner* and *Mr. Harold J. Warner,* with oral arguments by *Mr. James Roy Raley* and *Mr. Frederick Steiwer.*

McBRIDE, C. J.—This was a proceeding in the nature of *quo warranto* brought against the defendants, pretending to exercise the duties of school directors and clerk, respectively, of an alleged Union High

School District No. 5 of Umatilla County, Oregon; with the further object of having the alleged district declared nonexistent and the defendants incapable of exercising the duties of school directors and clerk therein.

1. The whole case turns upon the construction of certain sections of the Oregon Laws, and while questions other than the construction of these statutes are discussed we deem them unimportant in view of our construction of the statutes, which will be hereinafter quoted.

Section 5305, Oregon Laws (Olson's Compilation), among other things, provides:

"(a) If a union high school is formed by uniting two districts of the third class, the school board of each of such districts shall be *ex-officio* members of the union high school board.

"(b) If formed by any other combination of districts, the chairman of each school board shall be a member of the union high school board until the next annual school meeting, then there shall be elected from each district one member of the union high school board. * * "

This section was amended by Chapter 316 of the Laws of 1921 so that it now reads as follows:

"Section 1. That section 5305 of the Oregon Laws be, and the same hereby is, amended to read as follows:

"Sec. 5305. Union High School Board, How Constituted. (a) If a union high school is formed by uniting two districts of the third class, the school board of each of such districts shall be *ex-officio* members of the union high school board.

"(b) If formed by uniting more than two and less than six districts of the third class, the chairman of each school board shall be *ex-officio* a member of the union high school board.

"(c) If formed by uniting more than five districts of the third class, the union high school board shall consist of five members, having the qualifications of school directors, to be elected at large from said union high school districts; provided, that not more than one member shall be elected from any district.

"(d) At the election for the organization of a union high school district composed by uniting more than five districts, and at the next annual election for union high school districts composed of more than five districts heretofore organized under the union high school act, there shall be elected five members of the union high school board. * * ''

It will be seen that this amendment entirely leaves out of view and fails to provide for the organization of union high school districts excepting by a combination of districts of the third class, and if we take the statute as it reads there is now no provision for uniting districts of the third class with districts of the first and second class.

One of the districts included in this attempted organization of Union High School District No. 5 was a district of the third class. The other districts were not of that grade. It was earnestly contended that the legislature could not have intended to prevent the organization of a high school district including districts of different classes, but that we should treat the amendment which eliminates the combination of districts of different classes as a clerical mistake and not intended by the legislature.

We are unable to accede to this view. To do this we would be required not only to strike out the words "third class" wherever they occur in the amendment, but to insert subdivision (b) of Section 5305 as it existed prior to the amendment. This would be judicial legislation, pure and simple. We

have carefully examined the journals of the two houses and noted the course of the amendment of 1921 and find that it was introduced in precisely the shape in which it now appears and that the bill was referred to committees of both houses and reported back without any amendment or change and was passed in exactly the condition in which it appears in the Session Laws of 1921. This would seem to preclude the idea that there was any mistake or oversight in the framing of the measure or that its consequences were not intended by the legislature. While able and plausible arguments have been made by counsel for defendants pointing out, or attempting to point out, the alleged absurd consequences of a literal construction of the statute, it does not appear to us that these results are so absurd as to justify us in holding that the legislature did not intend to use the language employed by the framers of the measure. The language is plain, capable of being understood by any legislator possessing ordinary common sense, and we assume that every member has at least that; and if, viewing it in the light of its practical administration, the amendment has produced a result which experience now shows to have been bad, such result is not uncommonly the case with experimental legislation.

We regret the consequences which must follow by adhering to the literal construction of the act inasmuch as it appears that a large majority of the legal voters of all the districts desired to organize a union high school district, but we see no remedy except an appeal to the legislature.

2. We are of the opinion, after examining the various amendments as the law now stands, that every legal voter residing in the district has the right

to vote upon the question of the organization of a union high school district, irrespective of the fact that such voter is not a taxpayer, but in view of the fact that District No. 5 was not properly organized we are compelled to reverse the decree of the Circuit Court and enter a decree declaring the pretended organization of Union High School District No. 5 to be void and such district nonexistent, and, further, that the defendants have no right to exercise any duties as officers of such pretended district.

REVERSED AND DECREE ENTERED.

Reversed on rehearing January 14, 1924.

ON REHEARING.

(221 Pac. 1057.)

REVERSED ON REHEARING.

For appellants there was a brief over the names of *Mr. S. A. Lowell* and *Messrs. Fee & Fee,* with oral arguments by *Mr. Lowell* and *Mr. James A. Fee, Jr.*

For respondents there was a brief over the names of *Messrs. Raley, Raley & Steiwer,* with oral arguments by *Mr. James Roy Raley* and *Mr. Frederick Steiwer.*

BURNETT, J.—It seems that in 1921 some steps were taken in Umatilla County for the purpose of forming High School District No. 4. The matter went so far as an election and the declaration of the district boundary board that the district was duly organized. At subsequent elections two common school districts were added. High School District No. 4

went into operation, employed teachers, instructed pupils and the like, when on December 27, 1921, an action in the nature of *quo warranto* was commenced against it and its officers to require them to show by what authority it existed and they were exercising office of directors and clerk of that concern.

On February 16, 1922, several occurrences took place. The district boundary board rescinded the order declaring High School District No. 4 duly organized. The defendants in the *quo warranto* proceedings, to test the validity of High School District No. 4, disclaimed all right or authority and consent that a judgment should be entered according to the prayer of the complaint ousting the directors and clerk from their office and dissolving District No. 4 which judgment was accordingly entered on that day. There was filed with the district boundary board petitions from School Districts No. 8, 14, 26, 112 and 115 asking for the formation of new high school district which will be called, for convenience, No. 5. The districts involved were all of the third class except No. 14 which is of the second class and were the identical districts included in High School District No. 4.

The substance of the complaint in this action commenced on the relation of School District No. 8 and certain individuals is, that the steps taken for the formation of District No. 5 were begun while the action against No. 4 and its officers was still pending and that the demand was to organize a new district from the same common school districts and including precisely the same territory that composed District No. 4. The answer herein challenges the complaint in material particulars and then in meticulous detail sets up proceedings in each of the five districts taken

for the purpose of forming a new High School District No. 5. Practically the same set of allegations is used for each of the five districts and it is said in the answer that these were presented to the boundary board on February 16, 1922.

The question is before us on the action of the court overruling a demurrer of the plaintiffs to this answer in justification. The contentions in support of the demurrer are three: 1. That the justification does not affirmatively show that District No. 4 was dissolved by the judgment in *quo warranto* before the petitions for the organization of No. 5 were presented to the district boundary board; 2. That it does not appear by the answer that the petitioners for the organization of No. 5 were possessed of property qualifications required of voters in school districts; and 3. That at the time District No. 5 was organized there was no provision in the law for choosing a board of directors where a common school district of the second class is one of the component parts of the proposed high school district.

3, 4. It is a principle of law that no two governmental *quasi* corporations can exist for the same purpose in the same territory at the same time, but this question does not necessarily appear in the answer. It is true that the judgment dissolving No. 4 was rendered on the same day that the petitions were filed with the boundary board asking for the formation of No. 5. As soon as a judgment was pronounced dissolving No. 4 and ousting its officers, it became effective. The way was then clear for the initiation of a new proceeding, even on the same day, for the formation of a new high school district including the same territory and the same districts composing the former district. It does not necessarily follow that because the dissolution of District

No. 4 and the initiation of the formation of District No. 5 occurred on the same day, the former district was in existence when the new proceeding was commenced. The authorities are collated in *Brady* v. *Gilman,* 96 Minn. 434 (104 N. W. 897, 13 Am. St. Rep. 622, 1 L. R. A. (N. S.) 835 and notes). For instance, it is said in *First Nat. Bank* v. *Burkhardt,* 100 U. S. 686 (25 L. Ed. 766):

"For most purposes, the law regards the entire day as an indivisible unit. But when the priority of one legal right over another, depending upon the order of events occurring on the same day, is involved, this rule is necessarily departed from."

If the plaintiffs would abate proceedings for No. 5 on account of No. 4 being yet in existence, they should plead it in the reply. The demurrer does not raise the question.

5. The contention that it must appear in the answer that the signers of the petition for the organization of No. 5 had property qualifications must be disregarded. When the original Union High School Law was enacted in 1907, the second section thereof codified as Section 5298, Or. L., was framed in these terms:

"When used in this act, the term regular school district means all districts heretofore organized or those hereafter organized by the district boundary board; and union high school districts those formed in accordance with the provisions of this act; and legal voters those who can legally vote for school officers in their respective districts."

At that time the voter at any school meeting or election in a district was required to be a citizen of the state, male or female, 21 years of age, to have resided in the district thirty days preceding the election, and to have property in the district as

shown in the last county assessment and not assessed by the sheriff, on which he or she is liable or subject to pay a tax: L. O. L., § 4089. Various qualifications, provisos and exceptions are annexed to the definition of voters in that section, which are not necessary to be quoted here. In 1917 the section codified as Section 5140, Or. L., was enacted defining a voter in the school district in much the same terms but with the proviso,

"That the property qualifications imposed by this section shall not apply in the election of school directors and school clerks."

The law on that subject was in this later condition when the proceedings described by the pleadings herein were carried on. The contention for the plaintiff under the demurrer is that the law defining voters for the purpose of forming a high school district remains the same as it was at the time the original high school law was enacted and they rely, among others, on *State* v. *Caseday*, 58 Or. 429 (115 Pac. 287). The question in that case was whether the formation of a jury in a criminal case should be governed by the then recently amended form of the Civil Code or by the Criminal Code and it was held that the Criminal Code prevailed without reference to the new form of the Civil Code. The ground of the decision was that the Code of Civil Procedure was enacted as a separate bill October 11, 1862, and the Code of Criminal Procedure on October 18, 1864. The latter statute declared,

"In criminal. actions, the trial jury is formed in the manner prescribed in Chapter II of Title II of the Code of Civil Procedure, except as otherwise expressly provided in this chapter." Section 1520, L. O. L.

There was thus an explicit reference to a former statute by chapter and title which was tantamount to incorporating the former text into the latter enactment bodily, making it a literal part thereof and it was held that the amendment of the Civil Code would neither add to nor detract from the terms of the Criminal Code. A different principle, or at least an exception to that enunciated in the Caseday case must govern this case. Here, the language of the high school law is that legal voters are those who can legally vote for school officers in their respective districts. No particular reference is made to any certain statute defining such voters. The meaning of the high school law in that respect is that the definition of legal voters who can legally vote for school officers in their respective districts is to be found in the law prevailing at the time the voter exercises his franchise, whenever or wherever enacted. This principle is discussed in *State* v. *Ganong,* 93 Or. 440, 445 (184 Pac. 233), where the rule is quoted from Lewis' Sutherland on Statutory Construction (2 ed.), Section 405, thus:

"There is another form of adoption wherein the reference is not to any particular statute or part of a statute but to the laws generally which govern a particular subject. The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied."

So here, if in defining "legal voter" the high school law had said that legal voters are such as are defined in Section 4089, L. O. L., the subsequent amendment of this section would not have affected the voters seeking to establish High School District No. 5 and a property qualification would have been required of them; but the reference in the union high school law was general, without alluding to

any particular section. Hence the application of the rule quoted from Sutherland, that the definition must be as stated in the general law in force at the time it was to be applied. The conclusion on this point is that it was not necessary to show in the answer that the petitioners for High School District No. 5 had any property qualifications whatsoever.

We have again examined the present form of the statute providing for a board of directors for a union high school district, being Chapter 316 of the Laws of 1921 quoted in the former opinion. That statute provides for the formation of a board of directors where the combination of districts includes only districts of the third class. No provision of law is made for the formation of a board of directors for any other combination of districts. In the present instance, one of the districts essaying to form a high school district is of the second class. This takes the new confederation out of the classification mentioned in the statute based only upon a combination of districts of the third class. Therefore, whatever we may say as to the entity of the so-called High School District No. 5, whether void, voidable or having a mere empty existence, it certainly has no governing board of officers and there is no provision in the law as it stood at the time of the occurrences mentioned in the pleadings, whereby such a board could be formed. The individual defendants who pose as directors and clerk of High School District No. 5 have wrongfully intruded into those positions, undertaking to act as directors of a high school district without the sanction of any statute whatever. The result is that the demurrer to their answer must be sustained, for they have not shown any justification for their conduct. The judgment of the Circuit Court overruling the demurrer is therefore reversed.

6–8. A further demurrer went likewise to some separate answers. One of those answers was to the effect that the relator School District No. 8 is not interested in the result of the action, should not be heard as a relator therein, and has no taxable property within Union High School District No. 5. It is not apparent that common school districts have any authority to engage in litigation as relators in actions of this kind and hence that answer is effectual as to District No. 8. For a third further answer, the defendants allege that the relators C. H. Shaw and Harry Quick were never authorized either by the board of directors of School District No. 8 or the voters thereof to bring this action. The demurrer should be overruled as to this defense because in their character, as private citizens, Shaw and Quick might bring the action irrespective of authority from the district or its voters. The same may be said as to the demurrer to the fourth further defense directed against the relator Fraker, to the effect that he acted as director of High School District No. 5 and assisted in incurring the indebtedness thereof on account of which he should be estopped from acting as a relator in this proceeding. This plea is bad for that it is not shown thereby that the defendants were compelled to or did change their attitude to their damage in any of the proceedings on account of the conduct of Fraker. Moreover, these defenses go only to part of the plaintiffs, do not include all of them, and in any event would constitute defense only *pro tanto* so far as affected those particular plaintiffs. The judgment is reversed.

REVERSED ON REHEARING. MOTION TO RECALL MANDATE DENIED.