## W. J. Elzy et al. for use of The Farmers' Bank of Gays, Appellant, v. Fred Morrison, Appellee.

1. GARNISHMENT—*equitable proceedings.* A garnishment proceeding is an equitable proceeding and the court has equitable powers.

2. BANKS—*right to retain money on deposit.* A bank cannot withhold payment of a fund on deposit or refuse payment of a check on the ground that it holds a note which will mature at some future date for the payment of which it seeks to hold the deposit.

3. BANKS—*where deposit is garnished.* A bank cannot retain money on deposit to the credit of a judgment debtor, in answer to a garnishee summons, to be applied on a note not due, executed by the judgment debtor, which it holds.

4. MORTGAGES—*where mortgagee consents to sale.* Where one who holds a second mortgage on certain cattle consents to have the mortgagor sell them and deposit the money in his own name, he thereby releases his lien.

5. INTERPLEADER—*where mortgagee does not file.* Where a mortgagor sells cattle which are subject to two mortgages and deposits the money in a bank which is garnisheed by a judgment creditor, the second mortgagee who files no interpleader, is not entitled to claim the fund.

6. MORTGAGES—*fraudulent sale of mortgaged property.* Where there is a fraudulent sale of mortgaged property, the mortgagee is entitled to recover the fund where it can be followed.

7. GARNISHMENT—*where mortgagee files interpleader.* Where a mortgagor sells mortgaged cattle without the consent or knowledge of the mortgagee, and deposits the money in a bank which is garnished by a judgment creditor of the mortgagor, and the mortgagee files an interpleader claiming the amount of the deposit, a demurrer to the interpleader is erroneously overruled, when the mortgagee is not entitled to the whole deposit but only to a balance due on the note, and plaintiff is entitled to have the excess applied on its judgment.

8. GARNISHMENT—*on joint judgment.* Where a judgment on a note is against the maker and his wife, who is only surety, the judgment creditor may garnishee a fund deposited in a bank in the name of the husband.

Appeal from the Circuit Court of Coles county; the Hon. WILLIAM B. SCHOLFIELD, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed March 18, 1913.

VAUSE & HUGHES, for appellant.

CHAFEE & CHEW, for appellee.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

On October 15, 1910, W. J. Elzy bought from Fred Morrison, 61 head of steers for $2,767.84, for which he gave a note bearing seven per cent. interest, payable July 1, 1911. To secure the payment of this note, Elzy made and executed a chattel mortgage upon these cattle, this mortgage was properly acknowledged and recorded.

On May 22, 1911, Elzy made and executed a promissory note to J. E. Dazey for $1,593.90, due sixty days after date, and drawing seven per cent. interest. This note was also secured by a mortgage on the same cattle, Dazy's mortgage reciting that it was subject to the mortgage to Morrison. It is argued by counsel in this court that the note given to J. E. Dazey

was the property of the First National Bank of of Findlay, of which he was president, and that the bank has the right to hold the amount on deposit in Elzy's name and apply it on this note, but the record does not show either an assignment or delivery of the note by Dazey to the First National Bank of Findlay.

On or about June 6, 1911, while the notes secured by these mortgages were unpaid and the mortgages unreleased, Elzy, with the knowledge and consent of Dazey, but unknown to Morrison, so far as the record discloses, shipped the cattle to Chicago and disposed of them. It is claimed there were four or five cows shipped with the lot which were not included in the mortgage, but the record does not disclose any value or price received for these cows and the returns from the shipment was a gross sum which amounted to $3,557.65. The money received from the sale of these cattle was deposited in the Fort Dearborn National Bank of Chicago to the credit of W. J. Elzy, and was from there transferred to the First National Bank of Findlay, Illinois, and placed to his credit.

In April, 1911, the Farmers' Bank of Gays recovered a judgment against W. J. Elzy and Rose Elzy, his wife, for the sum of $522.21. On this judgment execution was issued and returned *nulla bona*. On the 10th of June, the Farmers' Bank of Gays caused an affidavit to be filed in the circuit court of Coles county, where its judgment was recovered; the affidavit set forth that affiant had reason to believe that the First National Bank of Findlay was indebted to the Elzys, and asked that the bank be summoned as garnishee. The summons was returned properly served, and the Bank answered admitting that W. J. Elzy at the time of the service of the summons had on deposit in his own name in the bank $522.21, being the exact amount of the judgment recovered by the Farmers' Bank of Gays, but that one Fred Morrison claimed to be the owner of said money, and claiming the right to appropriate to its own use said sum upon the payment of a note of

date February 1, 1911, due one year after date, executed to the bank by W. J. Elzy and Rose Elzy in the amount of $904.20, being the amount claimed to be due upon said note, and that when applied upon said note there will be nothing due from said First National Bank of Findlay to W. J. Elzy.

Fred Morrison filed an interpleader, claiming that the money in the First National Bank of Findlay belonged to him and not to Elzy. This interpleader set forth the purchase of the cattle by Elzy from Morrison, the execution of the mortgage by Elzy to Morrison, and that while the mortgage was still a subsisting lien the property was sold by Elzy without the knowledge or consent of Morrison for $3,557.65, and that this was the amount of money in the First National Bank' of Findlay when it was served as garnishee; that said property was the property of Fred Morrison and not of Elzy; this interpleader set forth that the mortgage and note held by Morrison amounted to $2,767.85.

A demurrer was interposed to the interpleader of Fred Morrison by the Farmers' Bank of Gays, and the answer of the First National Bank of Findlay was traversed by the Farmers' Bank of Gays. The demurrer to the interpleader was overruled and the cause was determined upon the demurrer, the Bank of Gays electing to stand by its demurrer. The judgment of the court was that Fred Morrison was the owner of the money on deposit in the First National Bank of Findlay, that the same was not the property of Elzy. The court gave judgment for costs in favor of the First National Bank of Findlay and Fred Morrison against the Farmers' Bank of Gays. The Farmers' Bank of Gays brings the record to this court by appeal.

Appellant insists that the trial court erred in holding that the money on deposit in the First National Bank of Findlay was the property of Fred Morrison. Upon the interpleader by Morrison the question raised

is where a valid and subsisting mortgage is a lien upon personal property and the personal property is sold by the mortgagor and disposed of before the mortgage debt is due, for cash, and the cash deposited in the bank to the credit of the mortgagor, whether or not the mortgagee can follow the fund derived from the sale of this property instead of being required to follow the mortgaged property, and whether or not he can at law in an interpleader as against a garnishment proceeding recover the proceeds of such sale.

Paragraph 24, chapter 62, R. S. on "Garnishment," provides that the court shall have equitable powers in a garnishment proceeding. A garnishment proceeding is, therefore, under the statute, an equitable proceeding. One question involved in this case is whether or not the First National Bank of Findlay had in its possession at the time of the service of the garnishment summons any funds, cash or property of any kind belonging to W. J. Elzy, who was the principal judgment debtor to the Farmers' Bank of Gays, the record disclosing that Rose Elzy, his wife, was merely surety on the note, as set forth by the replication filed to the answer of the First National Bank. The answer by the First National Bank of Findlay admits that it holds in its possession $522.21, being the property of W. J. Elzy, and the reasons it assigns why this fund should not be paid upon the judgment against W. J. Elzy is first, that the bank holds a note against W. J. Elzy for $904.20, but this note was not due; and second, that the fund is claimed by Fred Morrison. The fact that Fred Morrison claims the fund would be no defense to the garnishment proceeding so far as the First National Bank is concerned, and the only real defense attempted to be set up by it is that it owns a note for $904.20 which is not then due. Upon this question, the Supreme Court has fully determined in numerous cases that a bank cannot withhold payment of a fund on deposit with it or refuse payment of a check drawn upon a fund deposited with it by the de-

positor on the ground that it holds a note which will mature at some future date, and for the payment of which it seeks to hold the deposit. As a garnishee summons is the same as a demand upon the bank for payment, if the depositor would be entitled to a check upon that account, it follows that a bank cannot retain money on deposit to the credit of a judgment debtor in answer to a garnishee summons to be applied on a note not due which it holds executed by the judgment debtor. A judgment creditor of the depositor would be entitled to have it paid in a garnishment proceeding. *Commercial Nat. Bank v. Proctor,* 98 Ill. 558; *Fourth Nat. Bank v. City Nat. Bank,* 68 Ill. 401; *Fort Dearborn Nat. Bank v Blumenzweig,* 46 Ill. App. 297; *Merchants Nat. Bank v Ritzinger,* 20 Ill. App. 27.

The contention of E. J. Dazey that he held a note executed by Elzy which was secured by a mortgage upon the cattle, from which the fund in the First National Bank of Findlay was derived, is disposed of by the fact that he has filed no interpleader claiming this fund or any right thereto. He is also debarred from claiming this fund by reason of the fact that he went with Elzy and was present and consented to the shipment and sale of this stock by Elzy, without any agreement, so far as the record discloses, that the fund derived from the sale of the stock should be applied upon his debt, and even if he had made such an agreement the fund was primarily liable for the payment of the debt due Fred Morrison, Dazey's mortgage reciting that it was subject to that mortgage, and by consenting to this sale and permitting Elzy to deposit the fund in his own name thereby released any lien that he held as a second mortgagee upon this property. *Fairweather v. Nelson,* 76 Ill. 506.

There is no answer and there is no interpleader claiming the note made by Elzy to Dazey was owned by any other person than Dazey, although he was president of the First National Bank of Findlay.

The mortgage to Morrison upon this stock was a

subsisting lien and the stock was sold by Elzy without the consent of Fred Morrison, Morrison was entitled to be paid the amount due him from Elzy. While the mortgage lien was upon the property, upon a fraudulent sale of the property, if the property could be regained or identified, the mortgagee would have a right to proceed against the property, but he is not limited to this remedy, he would also have a right to proceed against any person assisting or aiding in the conversion of this property into money, and in equity if the fund can be identified to follow the fund. To hold that he could not follow the fund where the same was capable of being followed and ascertained, would be to permit the fraudulent act of the mortgagor to destroy the lien and perhaps defeat a recovery by the mortgagee, and we are satisfied that the general rule in equity is that where a fund can be followed and recovered the mortgagee is entitled to do so. *Harlan v. Ash,* 84 Iowa 38.

We are of the opinion that the interpleader filed by Morrison was good to the extent of the amount due him from Elzy upon his note, but that for any excess of that amount the Farmers' Bank of Gays was entitled to a judgment against the First National Bank of Findlay, and that the court erred in overruling the demurrer of the Farmers' Bank of Gays to the interpleader of Fred Morrison. It follows, therefore, that the court erred in rendering judgment for costs against the Farmers' Bank of Gays.

It is contended by appellee that this garnishment proceeding is an action by the judgment debtors, J. W. Elzy and Rose Elzy, against the First National Bank of Findlay for the use of the Farmers' Bank of Gays, and that no recovery can be had if the First National Bank of Findlay is indebted to only W. J. Elzy.

While it is a general principle and rule of law that where a firm or two persons are judgment debtors that in a garnishment proceeding the creditor of only one

of the judgment debtors cannot be garnished, the record in this case discloses that W. J. Elzy was the debtor and that Rose Elzy, his wife, was merely surety upon the note for him, and that while the judgment is against both and may be collected from either, the debt is primarily that of W. J. Elzy.

For the reasons above set forth, the judgment is reversed and the cause remanded.

*Reversed and remanded.*