Jessie D. Gillett, Appellant, v. Williamsville State Bank, Appellee.

Gen. No. 9,252.

Opinion filed April 14, 1941. Rehearing denied June 11, 1941.

LeForgee, Samuels & Miller, Charles C. LeForgee and Carl R. Miller all of Decatur, and A. M. Fitzgerald, of Springfield, for appellant.

Barber & Barber, of Springfield, for appellee.

Mr. Justice Riess delivered the opinion of the court.

This is an appeal by the plaintiff, Jessie D. Gillett, from a judgment entered against her on a directed verdict which was given at the close of the plaintiff's evidence in favor of the defendant appellee, Williamsville State Bank. Plaintiff had filed suit in assumpsit in the circuit court of Sangamon county, seeking recovery of the amount of a certain check dated July 7, 1933, in the sum of $581.90. The check had been drawn by one J. A. Havey on the defendant bank payable to the order of plaintiff.

J. A. Havey operated a grain, feed and coal business as an individual and had maintained a general

deposit and checking account with the defendant bank for a number of years. The grain business was operated at Elkhart, Illinois, in an elevator rented by him from the J. A. Havey Company, a corporation. The plaintiff had sold Havey 701 bushels and 5 pounds of wheat grown on her lands, which was delivered by wagon to his elevator on July 1, 3, 5 and 6, 1933. On July 7th, he gave her the check for $581.90 for the aggregate sale price of the wheat. Other wheat had also been placed in the elevator, both prior and subsequent to the time in July when her grain was so delivered. All of this wheat had been mixed in one elevator bin, from which Havey made several shipments and deposited the checks and drafts with bills of lading attached to his deposit account in the defendant bank on and prior to July 11th.

Plaintiff indorsed and deposited the check to her account in a Decatur bank on July 8, 1933, which latter bank mailed the same with numerous other checks to the Federal Reserve Bank of Chicago, and the latter in turn mailed them to the defendant bank for collection on July 10th. The list contained 49 items aggregating $1,920.27, and the checks reached the defendant's banking house on the morning of July 11th. All checks received that morning, including the above, were examined by the cashier and sorted by him into two lots; those to be marked paid and those which were not to be paid. The payor's accounts were examined to determine whether funds were on deposit to pay the checks, and this particular check was put through the bank's cancelling and perforating machine between nine and ten o'clock on that morning with the other checks which were to be marked paid, and was so marked and perforated as follows: "Paid 7-11-33." At that time, Havey's deposit account contained $4,467.66, which fact was known to the defendant.

Later, about three o'clock p. m. of the same day, the check was indorsed on the back "Cancelled through

error," over the cashier's signature and was mailed back to the Federal Reserve Bank at Chicago either on that evening or the following day with a ticket attached thereto stating "Not sufficient funds." This letter was received by the Chicago bank on July 13th. At 8:49 p. m. of July 11th, a telegram was sent by the defendant bank to the Chicago bank saying that they were "returning unpaid check—." No debit of this check was made to Havey's account, nor was any entry whatever made on the books of the defendant bank. The above balance in Havey's account was applied by the defendant bank toward the payment of its $9,500 Havey note and his account was then closed out. The drawer of the check knew nothing of the bank's action until the following day, when the plaintiff also learned of defendant's action through the Decatur bank, which was notified of the telegram by the Chicago Bank. The Chicago bank closed its doors for the day at 2:00 p. m. but received telegrams to 5:00 p. m. This telegram was delivered to it on the morning of July 12th. The list of 49 checks (plaintiff's Exhibit J) sent by the Chicago Bank to defendant bank, including plaintiff's check, bore the stamp "Paid July 12, 1933," and opposite the check in the list was a penciled notation 7/12. These dates and marks were not explained.

Havey had lived at Elkhart for about 22 years and had transacted all of his banking business with the defendant bank. The business consisted principally of purchasing grain from the farmers in his community, and payments for the grain were usually made by checks drawn on the defendant bank.

In the operation of his elevator business, Havey had carried a line of credit with the Williamsville State Bank since 1926. In July 1933, this credit amounted to $10,000, collaterally secured by a mortgage dated April 11, 1933, on the J. A. Havey Elevator Company leases and other property securing a collateral note for said amount due 2 years after said date with 6 per

cent interest per annum. On July 11, 1933, the bank also held Havey's personal note for $9,500 supplementing said collateral security, which latter note on which the above-mentioned deposit account was credited, had been executed on April 12, 1933, but no due or maturity date of this personal note appears anywhere in the record, nor does it appear that the same had become due and payable. Havey's purpose in securing this line of credit from the defendant bank was to obtain capital with which to conduct his business of buying grain, which had been previously discussed by him with the officers of the defendant bank in which the proceeds of his checks, drafts and bills of lading were then and had been for several years prior thereto regularly received and deposited to his account.

It further appears from the plaintiff's evidence that between one and two o'clock of the afternoon of July 11th, Havey had a talk with witness John R. Jones, who was both the president and a member of the board of directors of and worked at the defendant bank and was also a director of the Havey Corporation, concerning Havey's financial affairs, in which Havey spoke of the fact that a drop in the wheat market would financially embarrass him. In this conversation, which occurred at the home of Jones, who was called for cross-examination and testified under section 60 of the Civil Practice Act (sec. 184, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.060]), nothing was said to Havey relative to making any further arrangements about or payment of his note or obligations to the bank or that the same had become due. Nothing was said about the bank taking over the amount of his deposit or crediting it upon the $9,500 note held by the bank and nothing whatever was said about the check in question.

The case was tried before a jury upon issues joined by answer and reply under the allegations of counts one, two, four and seven of plaintiff's second-amended

complaint. No evidence was offered by the defendant. The trial court, after plaintiff's evidence was heard, denied plaintiff's motion to file amended counts one and two so as to conform to the alleged proofs, which denial was assigned as one of numerous alleged errors herein. The motion to file the amended count one of the second-amended complaint was warranted under the evidence herein and should have been allowed by the court under the provisions of section 46 of the Civil Practice Act (sec. 170, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.046]). It was an abuse of discretion under the evidence herein to deny the plaintiff the right to amend the complaint to conform to the testimony. *Jackson v. Jackson*, 294 Ill. App. 552, 14 N. E. (2d) 271; *Delfosse v. Kendall*, 283 Ill. 301, 119 N. E. 346. The motion to file the amended count two was properly denied, since there was no evidence tending to sustain all of the necessary material allegations thereof. The original sale of wheat by Havey from the mixed lots in the elevator to various purchasers with bills of lading attached in the usual course of trade did not evidence that the wheat had been held in trust by Havey and sold by him for plaintiff. It was an outright purchase of wheat in payment of which the check was given.

Numerous contentions are made as to propositions of law by the respective parties, upon which many authorities are cited, but the controlling question to be considered is whether or not a directed verdict should have been given to the jury in favor of the defendant at the close of plaintiff's evidence under the pleadings and facts appearing in evidence and the rules of law governing the same.

Upon a motion of the defendant for a directed verdict, the court can only determine whether or not there was any evidence, which, with all reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, tended to prove the material allegations of

the complaint or some count thereof. If there was such evidence, it became the duty of the trial court to deny the defendant's motion for a directed verdict and to submit controverted issues of fact to the jury, subject only to the giving of proper written instructions by the court as to the law applicable thereto. A motion to direct a verdict should be allowed if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case.

If it appears from the evidence and reasonable inferences therefrom that the drawer of such check had on deposit in the drawee bank sufficient funds available for the payment thereof and that such bank had so honored and accepted the check in writing or collected the same, the plaintiff has established a prima facie cause of action. The intention of the parties in relation thereto is ordinarily a question of fact to be gathered from their transactions both by word and action in so far as the same appears from the evidence.

It is provided by section 188 of the Negotiable Instruments Act (sec. 210, ch. 98, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 89.210]) that "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." See also *People v. Munday,* 293 Ill. 191, 127 N. E. 364. And the bank's acceptance of the check must be in writing. *People v. Munday,* 215 Ill. App. 356, aff'd 293 Ill. 191, 127 N. E. 364. The payee of an unaccepted check cannot sue and recover thereon from a drawee. *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278, 142 N. E. 458. If, however, the acceptance of the check is made in writing at the request of the payee, the bank becomes liable to the payee. *State Bank of Chicago v. Mid-City Trust & Savings Bank,* 295 Ill. 599,

129 N. E. 498, 12 A. L. R. 989. Where a check has been certified by mistake and the rights of third parties have not intervened, the certification may be revoked. *National Plumbing & Heating Supply Co. v. First Nat. Bank of Chicago*, 260 Ill. App. 431. Acceptance is a promise to pay in the future and continues the life of the bill or check, whereas payment is the final act which extinguishes the bill. *State Bank of Chicago v. Mid-City Trust & Savings Bank, supra.* Whether or not the acceptance or collection and payment of a check was intended by the drawee or was made by mistake would ordinarily become a question of fact dependent upon the particular facts and circumstances of each case.

Under section 188 of the Negotiable Instruments Act of 1907, *supra,* upon the acceptance of a check by a drawee bank, to the extent of the funds, where funds are available in depositor's account to meet the same, an agency relationship requiring them to transact the same arose, and having so existed, the relationship of debtor and creditor after acceptance existed between the bank and the payee of the instrument and it became the duty of the bank to forward the same pursuant to instructions from the forwarding bank, and failure to do so would make such drawee bank liable in a suit for recovery of funds after having accepted said check. If payment was so made, the bank will be required to account for such funds to the legal holder of the check. *American Exchange Nat. Bank v. Gregg,* 138 Ill. 596, 28 N. E. 839, 32 Am. St. Rep. 171; *Guardian Nat. Bank v. Huntington County State Bank,* 206 Ind. 185, 187 N. E. 388, 92 A. L. R. 1056; *Woodward v. Savings & Trust Co.,* 178 N. C. 184, 100 S. E. 304, 5 A. L. R. 1561; *Oddie v. National City Bank,* 45 N. Y. 735, 6 Am. Rep. 160; *Cohen v. First Nat. Bank,* 22 Ariz. 394, 198 Pac. 122, 15 A. L. R. 701.

The Illinois Act of 1931 which undertook to make such acceptance by the drawee bank conditional during the day on which it was received was not in effect

and does not apply herein, since the same was declared unconstitutional *in toto*. *People ex rel. Barrett v. Union Bank & Trust Co.*, 362 Ill. 164, 199 N. E. 272. Such contention offered as a special defense was on motion properly stricken by the trial court. The order of completed events, where no contract nor special custom to the contrary known to both parties appears, is controlling. *National Bank v. Burkhardt*, 100 U. S. 686.

While counsel have not cited and we are unable to find any case involving exactly parallel facts, the Illinois case of *American Exchange Nat. Bank v. Gregg, supra,* has been widely cited by State and Federal courts as illustrating what facts tend to evidence acceptance and payment of a check. In that case, it was held that where a bank accepts a check drawn on it, stamps the same as paid and enters the amount thereof to the credit of the holder presenting it, this will constitute payment of the check, although the bank may fail to charge the account of the drawer on its books with the amount and after such payment the bank will have no authority to charge back the amount of the check to the depositor, or his account, without his consent.

In discussing the facts, the court, at page 599, said: "As has been seen, the check Kershaw & Co. gave to D. Eggleston & Son was presented to the bank for payment, properly endorsed by the payees. The bank received the check, stamped it, paid it, and placed the amount thereof to the credit of D. Eggleston & Son upon the books of the bank. This must be regarded as a payment of the check. The transaction was as complete a payment as if the bank, when the check was presented, had paid in money the amount thereof into the hands of D. Eggleston & Son, and they, in turn, had deposited the money in the bank to their credit. When the check was presented and accepted by the bank and cancelled, and deposited to the credit of D. Eggleston & Son, as between the depositors and the

bank the transaction was closed, and the bank had no authority afterwards, without the consent of D. Eggleston & Son, to charge the check back to their account. That act, without such consent, was a nullity.''

Numerous cases are there analyzed as being illustrative of the principle involved, among them being *Oddie v. National City Bank, supra,* from which was quoted the following in part: ''Here the plaintiffs clearly put in the check as a deposit, and the defendant as clearly received it as such, and credited plaintiffs with it. The credit on the deposit ticket was as significant an act, evincing the consent of the defendant to the payment of it, as if made upon the pass-book of the plaintiffs and entered upon the books of the bank. . . . In determining the legal effect of such transactions we must apply the same rules applicable to all contracts and business affairs, and carry out the intention of the parties, to be gathered from their acts and declarations and the accustomed and understood course of the particular business. Applying these rules, there can be no doubt but there was an express demand on one side, and consent on the other, that this check should be placed to the credit of the plaintiffs as a deposit. The legal effect of the transaction was precisely the same as though the money had been first paid to the plaintiffs and then deposited. When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in *Pratt v. Foote,* 9 N. Y. 463; but if it accepts such a check, and pays it, either by delivering the currency or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine.''

The court then quoted with approval certain language from page 321 of Morse on Banking and commented as follows concerning the case of *National*

*Bank v. Burkhardt, supra:* "In *Bank v. Burkhardt,* 100 U. S. 686, the quotation from Morse and the case of *Oddie v. National City Bank* are quoted with approval, and the doctrine therein announced fully sanctioned. Where a check is offered as a deposit, and received as such, the check being genuine, in the absence of fraud the bank becomes the debtor of the depositor, and the title of the deposit passes to the bank, and no reason is perceived why the transaction should not be conclusive and an executed one between the two parties. Indeed, any other rule would embarrass the transaction of business between banks and their depositors."

The Illinois court then concluded (page 601): "Something has been said in regard to the fact that the check given to D. Eggleston & Son had not been actually charged to Kershaw & Co. on the books of the bank until after the check involved was presented and payment demanded. We do not regard this as a controlling element in the case. This was a matter of book-keeping, and the rights of the parties are not to be determined merely from the manner in which books are kept. When the check in question was presented, the question was, whether Kershaw & Co. at the time had funds in the bank sufficient to pay it. If they had, the bank was bound to pay the check; otherwise not. In determining this question the bank had the right to take into consideration a check drawn by Kershaw & Co., which had in good faith been previously paid, although such check remained on a spindle in the bank and had not been entered up by the book-keeper." The fact that the Illinois statute has since provided for written acceptance by the drawee bank would not change the doctrine adopted by the court as affecting payment and completion of the transaction between all parties concerned. In that case, it may be noted that a credit slip was issued to the depositor, while in the instant case, the check, after separation and examination of the account and sig-

nature of the drawer, was separated, placed with numerous other checks, all of which were cancelled by the bank, perforated and marked paid at a time when the depositor's account contained sufficient funds to make payment of the same in full. These facts clearly appear from the evidence, considered in the light most favorable to the plaintiff, against whom the motion was directed.

In the case of *Nineteenth Ward Bank v. First Nat. Bank of South Weymouth,* 184 Mass. 49, 67 N. E. 670, in discussing the application of this rule, the court said: "When the bank, through its cashier, wrote upon the face of the note in its own name, as the indorsee and holder, that it was paid, and perforated it and put it in the files as a thing paid, nothing more was to be done as to the payment. By those acts there had been set apart and appropriated to the payment of the note so much of the deposit then standing to the credit of the makers as was sufficient for that purpose, just as though the makers had presented to the bank their check in payment of a claim due it from them. It is true that the proper records were to be made upon the books, but the payment is effected by the acts, and not by the record, and was valid even without records. Consequently the question of the subsequent records is not material. So far as respected the plaintiff, the defendant had received the money for the note, and was bound to remit it to the plaintiff." The fact that in the latter case a note was so honored and stamped paid while in the instant case a check was involved in no way affects the application of the above principle.

In the case of *People ex rel. Nelson & Trust Co. of Rockford,* 353 Ill. 479, 187 N. E. 522, in discussing the trust relationship of the parties in which the drawee bank received a check for collection through another bank with directions to remit, but the drawee bank, before remitting, was closed by the State Auditor, the court cited with approval the rule applied in a Kansas case and in fifth edition of Morse on Banks and Bank-

ing, therein cited, commenting as follows: "We hold that when the Tolmie check was presented to the Rockford bank and canceled, the funds represented thereby became definitely a *res* upon which a trust might, and immediately did, impress itself, in the same manner and to the same extent as though Tolmie Bros. had withdrawn the currency and handed it back to the bank with instructions to remit it, without signifying the manner or form of remittance."

When a draft or check is forwarded for collection and remittance and the collection is made, the proceeds become a trust fund for the benefit of the forwarder. *People ex rel. Nelson v. Peoples Bank & Trust Co. of Rockford, supra; People ex rel. Nelson v. Bank of Rushville,* 270 Ill. App. 416; *People v. Iuka State Bank of Iuka,* 229 Ill. App. 4.

While it is a recognized rule of law in this State that a bank may set off the account of a depositor from whom a past due obligation and indebtedness has accrued to the bank, this right is not absolute and would not apply where a trust relation between a bank and a third person has arisen. Nor can a bank apply the deposits of a debtor to an unmatured indebtedness in the absence of express authority to do so. *Elzy v. Morrison,* 180 Ill. App. 711, 7 Am. Jur. 459.

In *American Nat. Bank of Nashville, Tenn. v. Miller,* 229 U. S. 517, 57 L. Ed. 1310, 33 Sup. Ct. 883, quoted in *Cohen v. First Nat. Bank, supra,* it is said by the court, speaking through Mr. Justice LaMar: "There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting the transaction is closed, and, in the absence of fraud or mutual mistake, is equivalent to payment in usual course. . . . In the present case it was as though an officer of the Macon Bank had presented the check to the teller of the Nashville bank, and, on receiving the money, had paid it back over the counter for deposit to the credit of the Macon bank."

In *Arkansas Trust & Banking Co. v. Bishop,* 119 Ark. 373, 178 S. W. 422, it was held that whether a bank which has issued a deposit slip to the holder of a check, drawn by another depositor on the bank, intended thereby to pay the check is a question of fact; that if it did so intend to pay the check by the issuance of such a deposit slip, it cannot thereafter rescind it. The intent of the parties must be inferred from what has been done. *National Bank v. Burkhardt, supra.* In some cases, the only thing that was done was to make an entry of credit upon the depositor's passbook, and it was held that the bank had not the right to cancel the credit thus entered. *Bryan v. First Nat. Bank of McKees Rocks,* 205 Pa. 7, 54 Atl. 480.

To the contrary, the appellee has cited certain cases from other States supporting the view that canceling, marking or stamping a check paid or cancelled does not alone constitute payment. Included therein are certain cases cited from Oregon, Indiana, Tennessee, Oklahoma and California.

In several of these cases, an examination of the authorities discloses that certain customs rendering the acceptance or payment conditional during the day or for a given length of time or wherein express provisions were printed in the passbook are discussed. Some of these authorities do hold that stamping of payment upon a passbook or check or slip or even entry thereof as a credit against an account of the drawer are insufficient to constitute payment. While the latter rule has been applied in some States under varying facts, it is not in accord with the trend of authority in Illinois or of the Federal Courts or of New York, Massachusetts and certain other States to which we have referred.

The more general and better opinion seems to be that such actions as evidenced the written intention of the drawee bank to collect against the account of the drawer, where his deposit is sufficient to meet such payment, whether evidenced by stamping the checks

as paid (unless done by actual mistake or where forgery is involved) or by issuance of deposit slips or crediting the same upon the books of the bank constitute evidence tending to show payment, and where such evidence appears in the record, even though there may also be evidence to the contrary as to the intention of the drawee bank, both the question of payment and the intention of the drawee bank become questions of fact, which, under proper instructions of the court as to the law, should be submitted to a jury for determination.

Moreover, it does not appear from the record whether the indebtedness on said note was or was not matured, in which latter instance, the bank would not have been justified in any event in taking over the account without express authority. *Elzy v. Morrison, supra; Levinson for use of Fleisher v. Home Bank & Trust Co.,* 251 Ill. App. 523; *Fort Dearborn Nat. Bank v. Blumenzweig,* 46 Ill. App. 297. Nor would the court, under the above state of the record, be justified in assuming without affirmative proof in the record that the bank's indebtedness thereon had become due and payable, or in assuming under a motion for a directed verdict, that the claim was past due. The note upon which the credit was made was identified but was never offered in evidence.

For the reasons herein given, we hold that the court erred in allowing defendant's motion for a directed verdict and instructing the jury to find for the defendant and in entering judgment thereon; that under the facts in evidence, the amendment of count one should have been allowed, the motion to exclude the evidence and for a directed verdict denied, and the cause submitted to the jury on the questions of fact in issue. This case is therefore reversed and remanded for trial in accordance with the holdings herein.

*Reversed and remanded.*