**BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N v. MERCHANDISE NAT. BANK OF CHICAGO et al.**

**O'RILEY v. BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N et al.**

No. 13039.

United States Court of Appeals
Ninth Circuit.

Dec. 24, 1952.

As Amended Feb. 9, 1953.

S. B. Stewart, Jr., G. D. Schilling, Morse Erskine and Erskine, Erskine & Tulley, San Francisco, Cal., for appellant Bank of America.

M. L. Crimmins, Jr., John L. Bradley and Crimmins, Kent, Draper & Bradley, San Francisco, Cal., for appellant Eugene J. O'Riley.

Moses Lasky and Brobeck, Phleger & Harrison, San Francisco, Cal. (Thomas P. Riordan, of Riordan, Linklater & Butler, Chicago, Ill., of counsel), for appellee Merchandise Nat. Bank of Chicago.

Before MATHEWS, STEPHENS and POPE, Circuit Judges.

MATHEWS, Circuit Judge.

At all pertinent times, Merchandise National Bank of Chicago, hereafter called plaintiff, was a national banking association located in Illinois and having its principal office at Chicago, Illinois; Bank of America National Trust & Savings Association, hereafter called defendant, was a national banking association located in California and having its principal office at San Francisco, California, and a branch, called its East Bakersfield branch, at Bakersfield, California; United Produce Company, hereafter called United, was an Illinois corporation; Eugene J. O'Riley and Frank Lofendo were citizens of Illinois; and Cy Mouradick was a citizen of California. In a bankruptcy proceeding commenced on December 1, 1948, United was adjudged a bankrupt on December 16, 1948, and O'Riley was appointed trustee in bankruptcy of United's estate on January 18, 1949. At all pertinent times prior to December 1, 1948, Lofendo was United's agent.

Plaintiff had an account with defendant at defendant's principal office. United had an account with plaintiff at plaintiff's principal office. Lofendo or United, in Lofendo's name, had an account with defendant, hereafter called the Lofendo account, at defendant's East Bakersfield branch.

The Lofendo account was established by Lofendo for United's use and benefit and, as between United and Lofendo, was United's account. However, it purported to be Lofendo's account and was treated by defendant as Lofendo's account. Accordingly, deposits in the Lofendo account were credited to Lofendo by defendant, and when checks drawn on the Lofendo account were paid, the amounts thereof were charged to Lofendo by defendant.

Prior to November 23, 1948, two items— $89,813.10 and $113,216.50—were charged to plaintiff by defendant and credited to Lofendo by defendant. Thereafter, until June 26, 1950, plaintiff claimed that the $113,216.50 was improperly charged to plaintiff and improperly credited to Lofendo. On and after June 26, 1950, plaintiff claimed that the $89,813.10 and the $113,216.50 were improperly charged to plaintiff and improperly credited to Lofendo. Defendant has at all times claimed that the $89,813.10 and the $113,216.50 were properly charged to plaintiff and properly credited to Lofendo.

On November 23, 1948, plaintiff demanded of defendant payment of the entire amount of the credit balance then existing in plaintiff's account with defendant, which is to say, the entire amount then due and owing to plaintiff by defendant.

If the $89,813.10 and the $113,216.50 were properly charged to plaintiff, there was due and owing to plaintiff by defendant on

November 23, 1948, $183,530.01. Defendant paid plaintiff the $183,530.01—$294.54 on an undisclosed date between November 23, 1948, and February 18, 1949, and $183,235.47 on February 18, 1949—but never made any other or further payment to plaintiff. Interest on the $183,235.47 at the legal rate of 7% per annum from November 23, 1948, to February 18, 1949, was $3,057.27. Therefore, if the $89,813.10 and the $113,216.50 were properly charged to plaintiff, there was due and owing to plaintiff by defendant at all times after February 18, 1949, $3,057.27, with interest thereon at the rate of 7% per annum from February 18, 1949.

However, if the $89,813.10 was properly charged to plaintiff, and if the $113,216.50 was improperly charged to plaintiff, there was due and owing to plaintiff by defendant at all times after February 18, 1949, $116,273.77 ($113,216.50 plus $3,057.27), with interest at the rate of 7% per annum on $113,216.50 thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949; but if the $89,813.10 and the $113,216.50 were improperly charged to plaintiff, there was due and owing to plaintiff by defendant at all times after February 18, 1949, $206,086.87 ($89,813.10 plus $113,216.50 plus $3,057.27), with interest at the rate of 7% per annum on $203,029.60 ($89,813.10 plus $113,216.50) thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949.

Furthermore, if the $89,813.10 and the $113,216.50 were properly credited to Lofendo, there was a credit balance of $30,920.36 in the Lofendo account on and after December 23, 1948; but if the $89,813.10 or the $113,216.50 was improperly credited to Lofendo, there was no credit balance in the Lofendo account on or after December 23, 1948.

On March 22, 1949, plaintiff commenced an action against defendant by filing a complaint, hereafter called the original complaint, in the United States District Court for the Northern District of California to recover the amount which defendant owed plaintiff. The original complaint was based on the theory that the $89,813.10 was properly charged to plaintiff, but that the $113,216.50 was improperly charged to plaintiff. However, instead of the amount which, according to that theory, defendant owed plaintiff—$116,273.77, with interest at the rate of 7% per annum on $113,216.50 thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949—the original complaint prayed judgment for $116,286, with interest at the rate of 7% per annum on $113,216.50 thereof from November 23, 1948, and on $3,069.50 thereof from February 18, 1949. The discrepancies were due to an error of computation on the part of counsel who wrote the original complaint.[1]

On June 24, 1949, defendant filed an answer, hereafter called the original answer to the original complaint.[2] The original answer to the original complaint was based on the theory that the $89,813.10 and the $113,216.50 were properly charged to plaintiff and properly credited to Lofendo. However, instead of admitting that defendant owed plaintiff the amount which, according to that theory, defendant owed plaintiff—$3,057.27, with interest at the rate of 7% per annum from February 18, 1949—the original answer to the original complaint denied that defendant owed plaintiff anything.[3]

The original answer to the original complaint contained three counterclaims denominated as such, all of which were based on the theory that the $89,813.10 and the $113,216.50 were properly charged to plaintiff and properly credited to Lofendo.

1. Counsel erroneously computed the interest on $183,235.47 from November 23, 1948, to February 18, 1949, as being $3,069.50, instead of $3,057.27.

2. The original answer to the original complaint was included in the record on appeal, but has not been printed.

3. The original answer to the original complaint ignored the fact that the $183,235.47 which defendant paid plaintiff on February 18, 1949, bore interest from November 23, 1948, and the fact that on February 18, 1949, interest on the $183,235.47 amounted to $3,057.27, no part of which was ever paid.

Two were counterclaims seeking to defeat or diminish the recovery sought by plaintiff and claiming other relief.[4] The third counterclaim, called an interpleader counterclaim,[5] prayed for an order making the trustee in bankruptcy, Lofendo and Mouradick third party defendants and requiring plaintiff, the trustee, Lofendo and Mouradick to interplead with respect to the credit balance of $30,920.36 which, as stated above, existed in the Lofendo account if the $89,813.10 and the $113,216.50 were properly credited to Lofendo, but did not exist if the $89,813.10 or the $113,216.50 was improperly credited to Lofendo. Such an order was made on June 24, 1949.

Thereafter, prior to June 15, 1950, plaintiff filed a reply to all the counterclaims in the original answer to the original complaint, and the trustee, Lofendo and Mouradick filed pleadings in response to the interpleader counterclaim in the original answer to the original complaint.[6] Plaintiff's reply was based on the theory that the $89,813.10 was properly charged to plaintiff and properly credited to Lofendo, but that the $113,216.50 was improperly charged to plaintiff and improperly credited to Lofendo, and that therefore there was no credit balance in the Lofendo account. The trustee's pleading and Mouradick's plead-

ing were based on the theory that the $89,813.10 and the $113,216.50 were properly credited to Lofendo, and that therefore there was a credit balance of $30,920.36 in the Lofendo account. The trustee, in and by his pleading, claimed the $30,920.36. Mouradick, in and by his pleading, claimed a lien on the $30,920.36.[7] Lofendo, in and by his pleading, disclaimed any interest in the $30,920.36.

A trial was had, beginning on June 15, 1950, and ending on June 29, 1950. Plaintiff, defendant and the trustee participated in the trial. Lofendo and Mouradick did not.[8] On June 23, 1950—in the course of the trial—plaintiff and the trustee moved for and obtained an order striking Mouradick's pleading from the files on the ground that it had not been served on plaintiff or the trustee.

On June 24, 1950—in the course of the trial—defendant was permitted to, and did, file an amended answer to the original complaint.[9] The amended answer to the original complaint differed in some respects from the original answer to the original complaint, but the differences are not material here.[10] Plaintiff did not reply to the counterclaims in the amended answer to the original complaint.[11] It was stipulated, however, that plaintiff's reply to the

4. See Rule 13(c) of the Federal Rules of Civil Procedure, 28 U.S.C.

5. See Rules 13(h) and 22(1) of the Federal Rules of Civil Procedure, 28 U.S.C.

6. The trustee's pleading purported to be an answer to the original complaint and a reply to the interpleader counterclaim in the original answer to the original complaint. Lofendo's pleading purported to be an answer to the interpleader counterclaim in the original answer to the original complaint. Mouradick's pleading purported to be an answer to the original complaint and to the interpleader counterclaim in the original answer to the original complaint.

7. The lien was claimed to have resulted from the service on defendant of a writ of attachment issued in an action brought by Mouradick against Lofendo in the Superior Court of Kern County, California, on or about March 31, 1949, whereby Mouradick sought to recover of Lofendo $12,336.21.

8. Lofendo was not present or represented at any time during the trial. Mouradick was not present at any time during the trial. Mouradick's counsel was present on the first day of the trial, but took no part in the trial on that day and was not present on any subsequent day of the trial.

9. The amended answer to the original complaint was included in the record on appeal and has been printed.

10. Like the original answer to the original complaint, the amended answer to the original complaint was based on the theory that the $89,813.10 and the $113,216.50 were properly charged to plaintiff and properly credited to Lofendo.

11. Like the original answer to the original complaint, the amended answer to the original complaint contained three counterclaims denominated as such, all of which were based on the theory that the $89,813.10 and the $113,216.50 were properly charged to plaintiff and properly credited to Lofendo.

counterclaims in the original answer to the original complaint might be considered its reply to the counterclaims in the amended answer to the original complaint. The trustee, Lofendo and Mouradick did not, nor did any of them, plead to or take any notice of the amended answer to the original complaint or any of the counterclaims therein.

On June 26, 1950—in the course of the trial—plaintiff was permitted to, and did, file an amended complaint. The amended complaint was based on the theory that the $89,813.10 and the $113,216.50 were improperly charged to plaintiff. However, instead of the amount which, according to that theory, defendant owed plaintiff— $206,086.87, with interest at the rate of 7% per annum on $203,029.60 thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949—the amended complaint prayed judgment for $206,117.10, with interest at the rate of 7% per annum on $203,047.60 thereof from November 23, 1948, and on $3,069.50 thereof from February 18, 1949. The discrepancies were due to errors of computation on the part of counsel who wrote the amended complaint.[12]. Defendant did not answer the amended complaint. It was stipulated, however, that defendant's amended answer to the original complaint might "stand" as its answer to the amended complaint. The trustee, Lofendo and Mouradick did not, nor did any of them, plead to or take any notice of the amended complaint.

On May 17, 1951, the District Court stated its findings of fact and conclusions of law, thereby, in effect, holding that the $89,813.10 and the $113,216.50 were improperly charged to plaintiff and improperly credited to Lofendo. If that holding was correct, the District Court should have entered a judgment ordering, adjudging and

decreeing that plaintiff recover of defendant $206,086.87, with interest at the rate of 7% per annum on $203,029.60 thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949, and costs, and that defendant, the trustee, Lofendo and Mouradick recover nothing. Instead, the District Court, on June 8, 1951, entered a judgment which, in effect, ordered, adjudged and decreed that plaintiff recover of defendant $206,117.10, with interest at the rate of 7% per annum on $203,047.60 thereof from November 23, 1948, and on $3,069.-50 thereof from February 18, 1949,[13] and costs; that defendant recover nothing by reason of the counterclaims in the amended answer to the original complaint; that the interpleader counterclaim in the amended answer to the original complaint be dismissed; and that the trustee's pleading [14] be dismissed. The judgment did not mention Lofendo or Mouradick.

Defendant and the trustee have appealed —defendant from the whole judgment, the trustee from that part of the judgment which dismissed the interpleader counterclaim in the amended answer to the original complaint and dismissed the trustee's pleading. The appeals challenge the correctness of the holding that the $89,813.10 and the $113,216.50 were improperly charged to plaintiff and improperly credited to Lofendo.

The record discloses the following facts:

The $89,813.10 was the aggregate amount of four checks dated November 6, 1948. The $113,216.50 was the aggregate amount of six checks dated November 8, 1948. The four checks and the six checks were drawn by United on United's account with plaintiff, were payable to Lofendo's order, were endorsed in Lofendo's name [15] and were mailed to defendant for deposit in

12. Counsel erroneously computed the $89,813.10 and the $113,216.50 as totaling $203,047.60, instead of $203,029.60, and erroneously computed the interest on $183,235.47 from November 23, 1948, to February 18, 1949, as being $3,069.50, instead of $3,057.27.

13. Thus the District Court accepted as correct the erroneous computations mentioned above.

14. In the judgment, the trustee's pleading was referred to as his "claim," as his "response," as his "answer" and as his "reply."

15. The four checks and the six checks were endorsed by stamping Lofendo's name on them with a rubber stamp.

the Lofendo account.[16] Deposit slips bearing Lofendo's name were mailed with them.

The four checks and the accompanying deposit slip were received by defendant on November 10, 1948. Thereupon, on November 10, 1948, defendant accepted the four checks for the purpose of collecting them—which is to say, for the purpose of obtaining payment of them—from plaintiff and for the purpose of crediting the $89,813.10 to Lofendo if and when they were collected. For the purpose of collecting them, defendant became and was Lofendo's agent.[17] Accordingly, on November 10, 1948, defendant mailed the four checks to plaintiff with a collection letter which, in effect, requested plaintiff to pay the four checks by crediting the $89,813.10 to defendant and authorizing defendant to charge it to plaintiff. The four checks and the accompanying collection letter were received by plaintiff on November 12, 1948. Thereupon, on November 12, 1948, plaintiff marked the four checks "paid" and mailed defendant an advice of credit which, in effect, advised defendant that plaintiff had credited the $89,813.10 to defendant, and that defendant was thereby authorized to charge it to plaintiff. On November 13, 1948, plaintiff charged the $89,813.10 to United and credited it to defendant as of November 12, 1948.[18] Defendant received the advice of credit relating to the four checks on November 16, 1948, credited the $89,813.10 to Lofendo on November 18, 1948, as of November 17, 1948, and charged it to plaintiff on November 19, 1948, as of November 18, 1948.

The six checks and the accompanying deposit slip were received by defendant on November 13, 1948. Thereupon, on November 13, 1948, defendant accepted the six checks for the purpose of collecting them from plaintiff and for the purpose of crediting the $113,216.50 to Lofendo if and when they were collected. For the purpose of collecting them, defendant became and was Lofendo's agent. Accordingly, on November 13, 1948, defendant mailed the six checks to plaintiff with a collection letter which, in effect, requested plaintiff to pay the six checks by crediting the $113,216.50 to defendant and authorizing defendant to charge it to plaintiff. The six checks and the accompanying collection letter were received by plaintiff on November 15, 1948. Thereupon, on November 15, 1948, plaintiff marked the six checks "paid" and mailed defendant an advice of credit which, in effect, advised defendant that plaintiff had credited the $113,216.50 to defendant and that defendant was thereby authorized to charge it to plaintiff. On November 16, 1948, plaintiff charged the $113,216.50 to United and credited it to defendant as of November 15, 1948. Defendant received the advice of credit relating to the six checks on November 19, 1948, and charged the $113,216.50 to plaintiff and credited it to Lofendo on November 20, 1948, as of November 19, 1948.

Plaintiff claimed that the charging of the $89,813.10 and the $113,216.50 to plaintiff and the crediting of them to Lofendo were improper for the following reasons:

Between November 4, 1948, and November 12, 1948, United obtained credits from plaintiff by endorsing and delivering to plaintiff checks drawn on the Lofendo account for amounts aggregating more than

---

16. Although the four checks and the six checks were payable to Lofendo's order, United did not deliver them to Lofendo, but retained possession of them until they were mailed to defendant. They were endorsed in Lofendo's name by United, not Lofendo, and were mailed to defendant by United, not Lofendo. However, they purported to have been delivered by United to Lofendo and to have been endorsed by Lofendo and mailed to defendant by Lofendo and were treated by plaintiff and defendant as having been so delivered, endorsed and mailed.

17. National Bank of New Zealand v. Finn, 81 Cal.App. 317, 253 P. 757; Bank of America of California v. Universal Finance Co., 131 Cal.App. 116, 21 P.2d 147; Powell v. Bank of America National Trust & Savings Assn., 53 Cal. App.2d 458, 128 P.2d 123; 9 C.J.S., Banks and Banking, § 218, p. 466.

18. Plaintiff and defendant followed the practice of "delayed posting"—a practice wherein and whereby book entries showing banking transactions were made on dates subsequent to the actual dates of such transactions.

$500,000,[19] knowing that when these checks were presented to defendant for payment, there would be no credit balance in the Lofendo account, or that, if there was a credit balance in the Lofendo account, it would be insufficient to pay them. United thereby defrauded plaintiff.

After receiving these checks from United, plaintiff endorsed them and presented them to defendant for payment, and defendant rejected them—which is to say, defendant refused to pay them and returned them to plaintiff without payment— between November 4, 1948, and November 17, 1948,[20] because, when they were presented to defendant, there was no credit balance in the Lofendo account, or, if there was a credit balance in the Lofendo account, it was insufficient to pay them.

Between November 4, 1948, and November 12, 1948, United obtained credits from plaintiff by assigning to plaintiff, as collateral, fictitious and non-existent accounts receivable and by falsely representing to plaintiff that these were actual accounts due and payable to United by debtors of United as the result of sales of merchandise. United thereby defrauded plaintiff.

■ United's purpose in perpetrating the frauds mentioned above was to create apparent credit balances in United's account with plaintiff and to cause plaintiff to believe that the apparent credit balances so created were actual credit balances. That purpose was accomplished. The District Court made findings to the effect (1) that, as a result of the frauds mentioned above, there was an apparent credit balance in United's account with plaintiff on November 12, 1948, and on November 15, 1948; (2) that, by these frauds, plaintiff was led to believe, and did believe, that there was an actual credit balance in United's account with plaintiff on November 12, 1948, and

on November 15, 1948; (3) that there was, in fact, no actual credit balance in United's account with plaintiff on November 12, 1948, or at any time thereafter; and (4) that there was, instead, an overdraft in United's account with plaintiff on November 12, 1948, and at all times thereafter. These findings were supported by substantial evidence and were not clearly erroneous. We therefore accept them as correct.[21]

On November 12, 1948, in marking the four checks "paid," charging the $89,813.10 to United, crediting it to defendant and mailing defendant the advice of credit relating to the four checks, plaintiff acted in the mistaken belief that there was at that time, in United's account with plaintiff, an actual credit balance sufficient to pay them. On November 15, 1948, in marking the six checks "paid," charging the $113,-216.50 to United, crediting it to defendant and mailing defendant the advice of credit relating to the six checks, plaintiff acted in the mistaken belief that there was at that time, in United's account with plaintiff, an actual credit balance sufficient to pay them. These mistakes of plaintiff were caused by and resulted from the frauds perpetrated by United.

These mistakes and frauds were discovered by plaintiff on November 17, 1948. Thereupon, on November 17, 1948, Frederick C. Messenger, plaintiff's vice president and comptroller, had a telephone conversation with Frank Estribou, manager of defendant's East Bakersfield branch. In that conversation, Messenger stated to Estribou, in substance, that the six checks had not been paid; that the advice of credit relating to the six checks had been mailed to defendant by mistake and as a result of frauds perpetrated on plaintiff by United, whereby United had defrauded plaintiff "of a very large sum of money;" and that the advice

---

19. These checks were payable to United's order. They were signed in blank by Lofendo and completed by United. However, they purported to have been drawn, signed and completed by Lofendo and were treated by plaintiff and defendant as having been so drawn, signed and completed.

20. All these checks were not presented to and rejected by defendant at the same time. Instead, such presentations and rejections occurred on various dates between November 4, 1948, and November 17, 1948.

21. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

of credit relating to the six checks was therefore revoked and rescinded. Messenger's statements to Estribou were, in effect, statements of plaintiff to defendant. Thus, on November 17, 1948—two days before defendant received the advice of credit relating to the six checks—plaintiff revoked and rescinded it and gave defendant notice of its revocation and rescission. Thereafter, on or before November 19, 1948, plaintiff returned the six checks to defendant,[22] charged the $113,216.50 back to defendant and credited it back to United.

Defendant contends that the six checks were paid on November 15, 1948—the date on which plaintiff marked them "paid" and mailed defendant the advice of credit relating to them. There is no merit in this contention. As indicated above, plaintiff was requested to pay the six checks by crediting the $113,216.50 to defendant and authorizing defendant to charge it to plaintiff. No other payment was contemplated. Therefore, unless and until defendant was authorized by plaintiff to charge the $113,216.50 to plaintiff, there was no payment of the six checks.

The District Court made findings to the effect (1) that during the existence of plaintiff's account with defendant, defendant from time to time sent to plaintiff for collection checks drawn on plaintiff; (2) that in such cases, defendant was authorized to charge the amount of such checks to plaintiff only upon actual receipt from plaintiff of a written authorization to do so, in the form of an outstanding and unrevoked credit memorandum or advice of credit; and (3) that this was the uniform custom, practice and arrangement between plaintiff and defendant and was observed by defendant at all times until November 19, 1948. These findings are not challenged.

There was no credit memorandum relating to the six checks. The advice of credit relating to them was not received by defendant until November 19, 1948—two days after its revocation and rescission. Therefore defendant was never authorized to

charge the $113,216.50 to plaintiff. Therefore the six checks were never paid.

On November 18, 1948—the day before defendant received the advice of credit relating to the six checks—Allen R. LeRoy, plaintiff's executive vice president, had a conversation with Roland T. Duncan, defendant's assistant vice president. In that conversation, LeRoy reiterated the statements made by Messenger to Estribou on November 17, 1948. LeRoy's statements to Duncan were, in effect, statements of plaintiff to defendant.

Messenger, in his conversation with Estribou on November 17, 1948, and LeRoy, in his conversation with Duncan on November 18, 1948, requested that the advice of credit relating to the six checks be returned to plaintiff by defendant. The request should have been, but was not, complied with. However, defendant's noncompliance with the request was unimportant; for, whether returned to plaintiff or retained by defendant, the advice of credit relating to the six checks was revoked, rescinded and wholly ineffective.

Defendant contends that the four checks were paid on November 12, 1948—the date on which plaintiff marked them "paid" and mailed defendant the advice of credit relating to them. Plaintiff contends that they were never paid. There is no merit in either contention. The advice of credit relating to the four checks—an outstanding, unrevoked and unrescinded advice of credit —was received by defendant on November 16, 1948. We therefore hold that the four checks were paid on November 16, 1948.

As indicated above, the advice of credit relating to the four checks, like the one relating to the six checks, was mailed to defendant by mistake and as a result of the frauds perpetrated by United; but that mistake and the frauds which caused it were not discovered by plaintiff until November 17, 1948—the day after defendant received the advice of credit relating to the four checks, which is to say, the day after the four checks were paid.

22. Each of the six checks, when returned, bore the following notation: "Cancelled in error. F. C. Messenger, Merchandise National Bank—Comptroller." The cancellation referred to was the marking of each check "paid."

However, having made that discovery, plaintiff had the right, on November 17, 1948, or at any time thereafter, to revoke and rescind (1) the advice of credit relating to the four checks and (2) the payment of the four checks, unless defendant, prior to such revocation and rescission, had changed its position to its detriment in reliance on that advice of credit and had become a bona fide purchaser for value of the $89,813.10;[23] but, for reasons which will presently appear, plaintiff did not exercise that right until June 26, 1950.

On November 17, 1948, when Messenger and Estribou had their conversation about the six checks, Messenger correctly assumed that defendant had received the advice of credit relating to the four checks and incorrectly assumed that defendant had changed its position to its detriment in reliance thereon. Messenger therefore did not mention the four checks. Messenger's incorrect assumption was based on statements made by Estribou to Messenger in that conversation.

In that conversation, Estribou stated that only two collection letters theretofore sent to plaintiff by defendant were then outstanding—the one accompanying the six checks and a later one not here involved— and that there was a credit balance of only $699.02 in the Lofendo account. The District Court made findings to the effect (1) that plaintiff reasonably assumed from Estribou's statements that defendant had changed its position in reliance on the advice of credit relating to the four checks; (2) that plaintiff, therefore, did not then or thereafter speak or write to defendant about the $89,813.10; (3) that defendant had not, in fact, changed its position and did not at any time change its position to its detriment in reliance on the advice of

credit relating to the four checks; and (4) that plaintiff did not discover until the trial of this action that defendant had never changed its position to its detriment in reliance on the advice of credit relating to the four checks. These findings were supported by substantial evidence and were not clearly erroneous. We therefore accept them as correct.

The first act done by defendant in reliance on the advice of credit relating to the four checks was the crediting of the $89,813.10 to Lofendo on November 18, 1948. At that time, there was an overdraft of $172,094.84 in the Lofendo account, which is to say, Lofendo was indebted to defendant in the sum of $172,094.84. How that indebtedness arose is indicated below.

On November 15, 1948, and on November 16, 1948, at the opening of defendant's business day, there was a credit balance of $13,061.17 in the Lofendo account. Checks drawn on United's account with plaintiff for amounts aggregating $97,207 were presented to and accepted by defendant for deposit on November 15, 1948, and defendant provisionally credited the $97,207 to Lofendo[24] on November 16, 1948, as of November 15, 1948. These checks were rejected by plaintiff on November 18, 1948, and the $97,207 was thereupon charged back to Lofendo.[25] Checks drawn on the Lofendo account for amounts aggregating $109,569.15 were paid by defendant on November 16, 1948, before defendant received the advice of credit relating to the four checks. Checks drawn on the Lofendo account for amounts aggregating $75,586.86 were paid by defendant at or before midnight of November 16, 1948.[26] Hence the overdraft of $172,094.84 ($109,569.15 plus $75,586.86 less $13,061.17).

23. National Bank of California v. Miner, 167 Cal. 532, 140 P. 27; Weiner v. Roof, 19 Cal.2d 748, 122 P.2d 896; Gillett v. Williamsville State Bank, 310 Ill.App. 395, 34 N.E.2d 552; 3 C.J.S., Agency, § 217, p. 126; Restatement, Agency, § 339, p. 745.

24. See Deering's California Financial Code, § 1011.

25. See Deering's California Financial Code, § 1017.

26. The checks for $75,586.86 were presented to defendant for payment on November 15, 1948, were not paid or rejected on November 15, 1948, were not rejected on November 16, 1948, and hence were deemed to have been paid at or before midnight of November 16, 1948. See Deering's California Financial Code, § 1013.

Defendant did not rely on the advice of credit relating to the four checks in crediting the $97,207 to Lofendo, in paying the checks for $109,569.15 or in paying the checks for $75,586.86. Hence the overdraft did not result from any such reliance.

In crediting the $89,813.10 to Lofendo on November 18, 1949, defendant applied it in part payment of Lofendo's indebtedness to defendant.[27] In so crediting and applying the $89,813.10 on November 18, 1948, and in charging it to plaintiff on November 19, 1948, defendant changed its position, but did not change its position to its detriment. Instead, the change was to its advantage. The District Court accordingly held, and we agree, that defendant did not become a bona fide purchaser for value of the $89,-813.10;[28] and the District Court correctly found that this was not discovered by plaintiff until the trial. Having made that discovery, plaintiff sought and obtained permission to file, and did file, the amended complaint. Thereby plaintiff, in effect, revoked and rescinded (1) the advice of credit relating to the four checks and (2) the payment of the four checks.

Defendant contends that if plaintiff recovers the $89,813.10 and the $113,216.50, defendant will suffer a loss of $172,109.24 ($89,813.10 plus $113,216.50 less $30,920.36), plus interest and that plaintiff caused this loss and is, therefore, not entitled to recover the $89,813.10 or the $113,216.50. There is no merit in this contention. Defendant's loss, if any, was proximately caused, not by any act or omission of plaintiff, but by defendant's own negligence in crediting the $97,207 to Lofendo and in paying the checks for $109,569.15 and the checks for $75,586.86.

Defendant contends that plaintiff was precluded from recovering the $89,813.10 and the $113,216.50 (1) because defendant had a lien on the proceeds of the four checks and the six checks, (2) because plaintiff received substantial benefit from the payment of the four checks and the six checks and (3) because plaintiff should have discovered that United and Lofendo were engaged in a practice called check-kiting.[29] There is no merit in any of these contentions. As we have shown, the six checks were never paid, and the payment of the four checks was revoked and rescinded. Hence there were no proceeds of the four checks or the six checks. Defendant did not, in any of its pleadings, assert a lien on the four checks or the six checks or the proceeds thereof, nor did the evidence show any such lien; nor did the evidence show that plaintiff received any benefit from the payment of the four checks, or that plaintiff's failure to discover that United and Lofendo were engaged in check-kiting caused defendant any loss or damage.

Other contentions of defendant are so obviously lacking in merit as not to require discussion.

We conclude, as did the District Court, that the $89,813.10 and the $113,216.50 were improperly charged to plaintiff and improperly credited to Lofendo.

The judgment is vacated, and the case is remanded with directions to enter a judgment ordering, adjudging and decreeing that plaintiff recover of defendant $206,-086.87, with interest at the rate of 7% per annum on $203,029.60 thereof from November 23, 1948, and on $3,057.27 thereof from February 18, 1949 and costs, and that defendant the trustee, Lofendo and Mouradick recover nothing.

27. There remained in the Lofendo account, according to defendant's books, an overdraft of $82,281.74 ($172,094.84 less $89,813.10). On November 20, 1948, as stated above, the $113,216.50 was credited to Lofendo by defendant. Thereafter, until December 23, 1948, defendant's books showed a credit balance of $30,934.76 ($113,216.50 less $82,281.74) in the Lofendo account. On December 23, 1948, defendant charged $14.40 to Lofendo to reimburse defendant for costs incurred in protesting the checks for $97,207. At all times thereafter, defendant's books showed a credit balance of $30,920.36 ($30,934.76 less $14.-40) in the Lofendo account. Actually, there was no credit balance in the Lofendo account at any time after November 18, 1948.

28. See authorities cited in footnote 23.

29. See 51 C.J.S., Kiting, p. 460.